■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v OLUWATOPE S. JEGEDE, Appellant. [761 NYS2d 332] —Lahtinen, J. Appeal from a judgment of the County Court of Broome County (Smith, J.), rendered January 10, 2002, upon a verdict convicting defendant of the crime of robbery in the second degree.

On January 13, 2001, at approximately 10:45 P.M., a robbery occurred at an Arby's restaurant in the Town of Vestal, Broome County. According to employees of the restaurant, the robber wore a dark "puffy" ski jacket, black gloves and dark jeans. He displayed a black and silver handgun, carried a backpack, and had a black nylon—knotted at the top—pulled over his head. Witnesses described the robber as an African-American male with height estimates ranging from five feet eight inches to six feet. During the robbery, three employees were forced into a walk-in cooler and the manager was directed at gunpoint to open the safe and cash registers. The perpetrator placed about $3,700 into his backpack and fled on foot.

Following an investigation, including executing a search warrant at the residence where defendant was living with his cousin, defendant was arrested and charged with one count of robbery in the second degree. A mistrial was declared during the course of the first trial and, before the second trial commenced, County Court suppressed all statements that defendant had made to police upon the ground that they had been obtained in violation of his *Miranda* rights. A second trial ensued at which the prosecution constructed a case based upon circumstantial evidence. The jury found defendant guilty of the charged crime and he was sentenced to six years in prison with five years' postrelease supervision. Defendant appeals.

Defendant contends that the verdict was not supported by the weight of the evidence. "If based on all the credible evidence a different finding would not have been unreasonable, then the appellate court must, like the trier of fact below, 'weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony'" (*People v Bleakley*, 69 NY2d 490, 495 [1987], quoting *People ex rel. MacCracken v Miller*, 291 NY 55, 62 [1943]). The evidence is examined in a neutral light (*see People v Labar*, 278 AD2d 522, 522 [2000]). Since the jury viewed the actual witnesses as they testified, their verdict is afforded due deference (*see People v Maxam*, 301 AD2d 791, 792 [2003]; *see also People v Bleakley, supra* at 495) and will not be set aside unless clearly not supported by the record (*see People v Maxwell*, 260 AD2d 653, 654 [1999], *lv denied* 93 NY2d 1004 [1999]; *People v Fernandez*, 248 AD2d 801, 801 [1998]). "[U]pon appellate review, this Court does not distinguish between direct and circumstantial evidence in assessing its weight or sufficiency" (*People v Labar, supra* at 522; *see People v Davis*, 260 AD2d 726, 729 [1999], *lv denied* 93 NY2d 968 [1999]).

Evidence at trial included testimony from defendant's cousin, Jedidiah Djanie, who related that he and defendant went together to the general vicinity of the robbery on the evening of January 13, 2001. They went separate ways at about 10:30 P.M. Shortly thereafter, Djanie entered a Dunkin Donuts alone, as reflected on a videotape from that coffee shop. Defendant and Djanie reunited around 11:00 P.M. and, thus, defendant had been unaccompanied by Djanie during the time when the robbery occurred. The day following the robbery, defendant traveled to New York City, where he traded his black down jacket to an acquaintance for a lighter weight jacket. That individual also observed a black and silver BB pistol that defendant had on his possession. While in New York City, defendant, despite being unemployed, had cash for taxi fares and bus tickets for himself and his girlfriend. The search of Djanie's residence, where defendant was living, resulted in police recovering, among other things, black pants, a BB gun owner's manual, a black nylon hair net, a black backpack and $461 in cash in a pair of defendant's jeans. There were, at trial, some discrepancies in the prosecution's proof, including estimates given by witnesses of the perpetrator's height. Moreover, one victim who had previously met defendant indicated that he could not identify the perpetrator's voice. The inconsistencies and uncertainties, while raising credibility issues for the jury, do not weigh so heavily in defendant's favor as to require

reversal (*see People v Bateman*, 241 AD2d 770, 771 [1997], *lv denied* 91 NY2d 869 [1997]). The prosecution presented evidence indicating that defendant fit the general description of the robber, he owned attire matching the description of that worn by the robber, he possessed a gun consistent with the one described by witnesses, he was in the vicinity of Arby's, alone, between 10:30 P.M. and 11:00 P.M., and he traded his black down jacket the day after the robbery. After weighing and considering the evidence in the record, we are not convinced that the jury's verdict should be disturbed.

Mercure, J.P., Crew III, Peters and Rose, JJ., concur. Ordered that the judgment is affirmed.