[844 NE2d 746, 811 NYS2d 292]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOAN BONGARZONE-SUARRCY, Appellant.

Decided February 9, 2006

**APPEARANCES OF COUNSEL**

*Appellate Advocates*, New York City (*Steven R. Bernhard* and *Lynn W.L. Fahey* of counsel), for appellant.

*Charles J. Hynes, District Attorney*, Brooklyn (*Leonard Joblove* and *Linda Breen* of counsel), for respondent.

**OPINION OF THE COURT**

MEMORANDUM.

The order of the Appellate Division should be affirmed.

In 1998, defendant was questioned at the Highland and Kingston State Police barracks in connection with the Brooklyn murder of her husband eight years earlier. Suspicion had fallen on defendant after the suicide of her former lover. In the note he left behind, he explained that he had been the victim of defendant's extortion; she had threatened to harm him if he did not continue to pay her. He feared that defendant might well follow through on this threat, since defendant had previously warned him that she had paid to have her husband killed in 1990. Questioned about the contents of the note, defendant was given a polygraph examination and stated that, while she had indeed told her former lover about murdering her husband, she had done so only to scare him, and that the statement had not in fact been true. Defendant passed the polygraph, and no charges were brought against her.

In 2001, defendant went to the Highland State Police barracks and 'volunteered to the trooper on duty that in 1990 she had paid her brother $20,000 to murder her husband, which he did. Tried for the homicide, defendant now claims that the admission of incriminating statements she made in 2001 violated her right to counsel. We disagree, and affirm her conviction.

At the suppression hearing, it was established that during the 1998 polygraph, an attorney had called the Kingston barracks and spoken to a police investigator, who in turn notified a Brooklyn detective investigating the 1990 murder. The attorney, who had previously been hired by defendant to represent her brother on an unrelated matter, was contacted by defendant's sister upon defendant's detention. In his communication with the investigator, the attorney said that he represented defendant, and asked both to speak to her and that the examination cease. As found by the suppression court, the detective interrupted the polygraph to inform defendant of the phone call, but defendant responded that because she hadn't done anything wrong, she did not need an attorney.

Even assuming that, by virtue of the attorney's call in 1998, defendant's indelible right to counsel attached, the right was

not violated by her 2001 interrogation. "Where a police officer does not know and cannot be charged with knowledge that the suspect has a lawyer, the officer has no obligation to refrain from asking questions" (*People v Carranza*, 3 NY3d 729, 730 [2004]). Although either actual or constructive knowledge by interrogating police officers suffices to perpetuate the indelible right to counsel once attached, neither existed here.

In assessing whether the police can be charged with knowledge—that is, whether they reasonably should have known of counsel's entry—a number of factors should be considered: the length of the passage of time; whether a record of the earlier communication exists in the files of the police agency conducting the questioning; whether the failure of such record to exist was the result of any bad faith on the part of police; whether any of the same officers were involved in the earlier and later investigations; whether any action was taken against the suspect in the aftermath of the original investigation; and whether the entering lawyer continued to have any contact with prosecuting authorities on the matter after the initial communication.

■ Here, none of the investigators or detectives who received or were informed of the attorney's 1998 phone call was involved in defendant's interrogation a full three years later. Since no charges were brought against defendant as a result of the original investigation, the attorney had no occasion for any further involvement in the matter or contact with the police after his initial phone call. Moreover, the record reflects that the Highland State Police had, in the intervening years, destroyed their closed case file concerning defendant's alleged extortion of her former lover—which presumably would have reflected the attorney's phone call during defendant's polygraph examination conducted at the Kingston barracks—in the regular course of business. Nor was any record of the 1998 interview of defendant (let alone of the attorney's phone call during that interview) contained in the case file of the Brooklyn South Homicide Squad when the file was examined in 2001. On these facts, the police who questioned defendant in 2001 neither knew, nor reasonably should have known, of the attorney's entry. That being so, any right to counsel that might have attached in 1998 did not prevent defendant from waiving counsel and speaking to police in 2001.

■ Because there is support in the record for the suppression court's undisturbed finding that defendant was not in custody

prior to the administration of *Miranda* warnings—a mixed question of law and fact—that issue is beyond our further review.

Chief Judge KAYE and Judges G.B. SMITH, CIPARICK, ROSENBLATT, GRAFFEO, READ and R.S. SMITH concur.

Order affirmed in a memorandum.