■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v GREGORY HECKSTALL, Also Known as G, Appellant. [845 NYS2d 488]—

Peters, J. Appeal from a judgment of the County Court of Rensselaer County (McGrath, J.), rendered April 12, 2005, upon a verdict convicting defendant of the crimes of murder in the first degree (two counts) and conspiracy in the second degree.

Defendant's convictions for the crimes of murder in the first degree (two counts) and conspiracy to commit murder arise from the fatal shooting of Christopher Drabik on December 30, 2003. Drabik, a confidential informant for the City of Albany Police Department, participated in two controlled buys with Michael Hoffler (also known as Murder). Hoffler was later arrested and indicted based on his transactions with Drabik; a trial was scheduled to commence in January 2004. Drabik, who was expected to act as a primary witness at the trial, was murdered one week before the trial began.* Hoffler, defendant and a third individual, Lance Booker, were arrested and charged with Drabik's murder. Defendant was indicted for the crimes of murder in the first degree (two counts), murder in the second degree and conspiracy in the second degree. Specifically, it charged that he was hired by Hoffler to commit the murder in order to prevent Drabik from acting as a witness at Hoffler's pending drug trial. After a nine-day jury trial, defendant was

---

* After a jury trial, Hoffler was found guilty of numerous drug-related offenses. His convictions were recently affirmed by this Court (*People v Hoffler*, 41 AD3d 891 [2007]).

convicted of murder in the first degree (two counts) and conspiracy in the second degree. He appeals and we affirm.

Defendant contends that by improperly discharging potential jurors who claimed that they would suffer undue hardship or extreme inconvenience if they were required to serve on the jury, County Court abused its discretion and unconstitutionally narrowed the jury pool. Moreover, he claims that his right to counsel was abrogated when County Court limited his attorney's participation during the pre-voir dire excusal process.

We disagree. Prior to jury selection, defendant's counsel specifically requested that County Court employ certain procedures when excusing jurors who claimed undue hardship. This included his request to approach the bench and file objections once a prospective juror claimed undue hardship. County Court agreed to specifically inquire and ensure that an individual would suffer a valid hardship before it excused a potential juror, but denied counsel's request to approach the bench to file objections by finding, as a matter of law, that counsel had no right to participate in the court's discretionary decisions when excusing prospective jurors for hardship (*see People v Velasco,* 77 NY2d 469, 473 [1991]). Counsel was, however, permitted to submit written objections to the court's rulings after the prospective jurors were excused.

County Court fully complied with Judiciary Law § 517 (b) and (c) and its attendant court rules (*see* 22 NYCRR 128.6-a) before it exercised its discretion to excuse prospective jurors based on claimed undue hardship. The determination to excuse a prospective juror before formal voir dire has begun is a matter resting solely in the discretion of the court. A defendant has neither a statutory nor a constitutional right to personally participate in the discussion which leads to the court's exercise of such discretion (*see People v Velasco,* 77 NY2d at 473; *see also People v Sloan,* 79 NY2d 386, 392 [1992]).

Defendant next asserts that County Court improperly concluded that the introduction of a photographic array which did not include defendant, but was viewed by the only witness to the murder, would open the door to the introduction of a second photo array which did include defendant. The eyewitness, a newspaper delivery person, testified that he was making deliveries from his vehicle on the morning that Drabik was shot. He saw two men talking together near the area where the shooting eventually took place and then heard a gunshot. After seeing Drabik fall to the ground, he observed the shooter running until he stopped in the middle of the street and "locked eyes" with the eyewitness for a brief moment. Fearing for his

safety, the eyewitness sped through the stop sign and left the scene. After calling 911, he returned to the scene to tend to the victim. Shortly thereafter, the eyewitness was shown a photographic array containing six individuals—one of which was Booker. Testimony elicited at a pretrial hearing confirmed that the eyewitness identified two individuals at that initial showing, stating that it was possible that one of them was involved in the shooting. Yet, the eyewitness maintained that he did not feel comfortable with the photo array because no one had the same eyes as the shooter. After being shown a second array of photographs, which included defendant, the eyewitness stated that he was confident that defendant was the individual who ran towards him after he heard the gunshot.

Prior to trial, defendant moved to preclude the People from introducing the eyewitness's identification of him in the second photographic array. Although the People conceded that such evidence would not be admissible on their direct case, they contended that if defendant attempted to impeach the eyewitness with his previous identification of Booker, he would open the door to the second identification of defendant. County Court agreed and defense counsel objected. For this reason, defense counsel did not elicit testimony from the eyewitness concerning the first identification.

A witness's pretrial photographic identification may not be introduced by the People in their direct case as it constitutes improper bolstering (*see People v Rivera*, 31 AD3d 1060, 1061 [2006], *lv denied* 7 NY3d 869 [2006]; *see also People v Mosley*, 296 AD2d 595, 596 [2002]). However, this rule is not without exception. Here, defendant intended to elicit the testimony regarding the first photographic array in order to discredit the eyewitness's in-court identification of defendant. Had he been permitted to do so without the People being able to introduce the positive prior identification of defendant, it would have created the "misimpression that the [eyewitness] was unable to identify [the] assailant" (*People v Lopez*, 9 AD3d 692, 694 [2004]). Once defendant opened the door, however, County Court was permitted to consider whether, and to what extent, such evidence is incomplete or misleading so as to allow the People to correct a potential misleading impression (*see People v Massie*, 2 NY3d 179, 180-185 [2004]; *see also People v Lindsay*, 42 NY2d 9, 12 [1977]). Thus, to the extent that the first array could be viewed as incomplete or misleading, County Court properly concluded that should such evidence be presented to the jury, defendant would have opened the door to the admission of the second photographic array to correct any misleading impression.

Finally, defendant contends that County Court erred when it refused to charge the jury with the lesser included offenses of manslaughter in the second degree and criminally negligent homicide. To establish his entitlement to such charge, defendant was required to demonstrate that it was not possible to commit the greater crime without necessarily committing the lesser and that a reasonable view of the evidence supported a finding that defendant committed only the lesser offense (*see People v Miller*, 6 NY3d 295, 302 [2006]; *People v Barney*, 99 NY2d 367, 371 [2003]; *People v Morales*, 36 AD3d 957, 958 [2007], *lv denied* 8 NY3d 988 [2007]). While the first element of this threshold was satisfied, as to the second, County Court properly concluded that there was no reasonable view of the evidence to support a finding that defendant was not the shooter and that he did not act intentionally but rather recklessly. Thus, the requested charge was properly denied.

Mercure, J.P., Crew III, Spain and Rose, JJ., concur. Ordered that the judgment is affirmed.