■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LANCE BOOKER, Also Known as NINJA, Appellant. [862 NYS2d 139]—

Peters, J. Appeal from a judgment of the County Court of Rensselaer County (McGrath, J.), rendered January 6, 2005, upon a verdict convicting defendant of the crime of murder in the first degree (two counts) and conspiracy in the second degree.

In December 2003, Michael Hoffler allegedly arranged for the murder of the victim, a confidential informant for the City of Albany Police Department who had engaged in two controlled buys with Hoffler in May 2003, in order to prevent the victim from testifying at Hoffler's January 2004 drug trial. Defendant allegedly assisted Hoffler and Gregory Heckstall in that effort.

Following the fatal shooting of the victim on December 30, 2003, one week prior to the commencement of Hoffler's drug trial, defendant, Hoffler and Heckstall were arrested and charged with the victim's murder. At the conclusion of the ensuing jury trial, defendant was convicted, as an accomplice, of murder in the first degree (two counts) and conspiracy in the second degree.[1] County Court sentenced defendant to two concurrent terms of life imprisonment without the possibility of parole upon his murder convictions and a concurrent prison

---

1. Following separate jury trials, Heckstall and Hoffler were likewise found guilty of, among other things, murder in the first degree. Heckstall's conviction was recently affirmed by this Court (*People v Heckstall*, 45 AD3d 907 [2007], *lv denied* 10 NY3d 766 [2008]) and Hoffler's conviction was reversed and the matter was remitted for a new trial (*People v Hoffler*, 53 AD3d 116 [2008]).

term of 8⅓ to 25 years for his conspiracy conviction. Defendant now appeals.

Defendant first argues that County Court erred by denying his motion to suppress the four written statements he made to police because his right to counsel had attached at the time the statements were made and a valid waiver of this right was never effectuated. New York's right to counsel attaches "where an uncharged individual has actually retained a lawyer in the matter at issue or, while in custody, has requested a lawyer in that matter" (*People v West*, 81 NY2d 370, 373-374 [1993]; *see People v Grice*, 100 NY2d 318, 321 [2003]).

With regard to the first written statement, County Court properly determined that, although defendant's right to counsel had attached when his attorney provided him legal advice over the telephone and informed the police of his representation of defendant (*see People v Davis*, 75 NY2d 517, 522 [1990]; *People v Ellis*, 58 NY2d 748, 750 [1982]), defendant thereafter made a knowing, voluntary and intelligent waiver of that right prior to the noncustodial police questioning. The testimony at the *Huntley* hearing established that, on January 7, 2004, the police wanted to speak with defendant, who was staying in the City of Newburgh, Orange County. While a number of detectives were en route to Newburgh, other police personnel went to the residence of defendant's paramour, Pamela White, in order to execute a search warrant. Shortly after their arrival, Tubosun Osofisan, an attorney who claimed to represent both defendant and White, arrived and had several extended telephone conversations with defendant, during which Osofisan advised defendant not to speak with police. At this point, Osofisan "entered the proceeding" and defendant's right to counsel therefore attached (*People v Robles*, 72 NY2d 689, 696 [1988]; *see People v Hobson*, 39 NY2d 479, 483 [1976]). Defendant, however, rejected Osofisan's advice, informing Osofisan that he wanted to speak with the police and that he had "nothing to worry about." Osofisan informed the police that defendant agreed to speak with them in his absence so long as he was notified if the police intended to arrest defendant, and this information was relayed to the detectives before they reached Newburgh to speak with defendant. Because the physical presence of an attorney is not required for a suspect to effectuate a valid waiver of the right to counsel where, as here, the police are assured by the attorney that the decision to waive counsel was made in consultation with the attorney (*see People v Beam*, 57 NY2d 241, 254 [1982]; *People v Yut Wai Tom*, 53 NY2d 44, 53-54 [1981]; *People v Brown*, 244 AD2d 347, 348 [1997], *lv denied* 91 NY2d 940 [1998]), and

since "[s]uch an assurance by the attorney who consulted with defendant is just as valid when made over the telephone" (*People v Beam*, 57 NY2d at 254), defendant's waiver of his right to counsel was valid.

Despite defendant's further assertion that his January 7, 2004 statement was improperly obtained because the police took him from Newburgh to Albany in violation of a condition of the waiver, County Court determined that the only condition Osofisan had placed on the waiver was that he be notified if defendant was going to be formally charged, which the police fully complied with. Inasmuch as Osofisan's testimony that he required notification if the officers left the motel room with defendant conflicted with that of the testifying officers, we decline to disturb County Court's credibility determination on this issue (*see People v Bermudez*, 31 AD3d 968, 968 [2006], *lv denied* 8 NY3d 944 [2007]). Accordingly, defendant's right to counsel was not violated and the January 7, 2004 statement was therefore admissible.

With respect to the three subsequent written statements made by defendant during the period from January 25-26, 2004, we find that County Court properly declined suppression. On January 9, 2004, Osofisan was informed by the prosecutor that White was being investigated in connection with the homicide and that a potential conflict of interest existed in his representation of both her and defendant. After some discussion, Osofisan agreed and signed a document, in the presence of the prosecutor and members of the City of Troy Police Department, withdrawing as counsel for defendant.[2] This document was provided to the People, and the other investigating officers were informed that Osofisan no longer represented defendant. While Osofisan made attempts to contact defendant to inform him of the withdrawal, he was unable to reach defendant, who testified that he was never made aware of Osofisan's actions. More than two weeks later, on January 25, 2004, the police sought defendant for further questioning. According to police, after agreeing to accompany detectives to the police station, defendant waived his *Miranda* rights and subsequently provided three written statements, without ever requesting counsel or indicating that he had an attorney.

Where, as here, "the police wish[ed] to question defendant without counsel on the same matter after the right ha[d] at-

2. Contrary to defendant's assertions, there is no evidence that the People intimidated a less experienced Osofisan into terminating his representation of defendant or otherwise fraudulently caused him to stop representing defendant.

tached, it [was] as a rule their burden to determine whether representation continue[d]" (*People v West*, 81 NY2d at 376; *see People v Marrero*, 51 NY2d 56, 59 [1980]). The police may not rely on ambiguities in the attorney-client relationship to justify the questioning of a defendant without counsel and, therefore, where the police are uncertain as to whether the representation has ceased, they should not question a defendant regarding the matter (*see People v West*, 81 NY2d at 380; *People v Marrero*, 51 NY2d at 59; *People v Coleman*, 42 NY2d 500, 507 [1977]). Here, however, we find no such uncertainty.

Police were present when Osofisan, in the presence of the prosecutor, signed the document indicating that he would no longer represent defendant, and the investigating officers relied upon this fact in pursuing further questioning of defendant (*compare People v Cotton*, 280 AD2d 188, 193 [2001], *lv denied* 96 NY2d 827 [2001] [finding that there was "no evidence that the police were aware of the conversation between [the] defendant's attorney and the Assistant District Attorney" where counsel indicated that he could no longer represent the defendant due to a conflict and, in any event, the police did not rely upon the disclaimer of representation in questioning the defendant]). Further, although the evidence at the *Huntley* hearing established that Osofisan neither consulted with defendant prior to withdrawing from representation nor advised defendant of this fact prior to subsequent police questioning, we perceive no obligation on the part of the police—in light of the fact that they possessed a direct, clear and unambiguous awareness that the representation had ceased—to question the validity of the withdrawal or seek assurance that Osofisan had communicated this fact to defendant.

To be sure, while defendant's lack of awareness of counsel's withdrawal may have precluded an effective termination of the attorney-client relationship, we need not "decide whether representation [actually] ceased because under [*People v Hobson* (39 NY2d 479 [1976], *supra*)] it [does] not matter: the 'important factor . . . [is] the police awareness of an attorney's [continued] appearance on the defendant's behalf, rather than the precise terms of the retainer or appointment' " (*People v West*, 81 NY2d at 376 n 2, quoting *People v Marrero*, 51 NY2d at 59; *see People v Singer*, 44 NY2d 241, 251 [1978]). Indeed, we cannot conclude that under these circumstances the police were required to do more to honor defendant's right to counsel, as "it would be unreasonable to require the police to cease a criminal investigation and begin a separate inquiry to verify whether the defendant is actually represented by counsel" (*People v Grice*, 100 NY2d at

324). In any event, "[e]ven assuming that . . . defendant's indelible right to counsel [remained] attached, the right was not violated by [his January 25, 2004] interrogation. 'Where a police officer does not know and cannot be charged with knowledge that the suspect has a lawyer, the officer has no obligation to refrain from asking questions' " (*People v Bongarzone-Suarrcy*, 6 NY3d 787, 788-789 [2006], quoting *People v Carranza*, 3 NY3d 729, 730 [2004]). As such, we find no fault with County Court's refusal to suppress these statements.

Defendant next contends that his convictions were not supported by legally sufficient evidence because the People failed to establish that he intended to assist in killing the victim. Initially, we disagree with the People's assertion that defendant failed to preserve this issue for our review. At the close of the People's case, defense counsel made a specific and detailed motion to dismiss which was directed at the failure to prove the element of intent to kill, an element of each of the crimes for which defendant was convicted (*see* Penal Law §§ 105.15, 125.27 [1] [a] [v], [vi]). This was sufficient to preserve defendant's current challenge to the legal sufficiency of his convictions (*see People v Gray*, 86 NY2d 10, 19 [1995]; *People v Carter*, 40 AD3d 1310, 1311 [2007], *lv denied* 9 NY3d 873 [2007]).

Turning to the merits, the evidence at trial, much of which was corroborated by defendant's testimony and the contents of his written statements, revealed that in early December 2003, Hoffler showed defendant the victim's driver's license, drove defendant to the victim's house to show him where the victim lived, and offered to pay defendant to kill the victim. Defendant agreed to kill the victim and accepted a gun, five $100 bills and crack cocaine from Hoffler. When defendant failed to commit the crime, Hoffler enlisted Heckstall to kill the victim. The day before the murder, Hoffler, after informing defendant that he needed a cellular "TRAC phone" to call the victim without calls being traced back to him, was provided one by defendant. The evidence revealed that the TRAC phone was used to call the victim and lure him to the site of the murder. That same day, defendant also acquired a gun and bullets for Hoffler, who instructed defendant to hide the extra bullets, which defendant did. Later that evening, defendant received a phone call from Hoffler, who informed him that he had found a location to which he could lure the victim.

Between 5:30 and 6:00 A.M. the following morning, defendant received two telephone calls from Hoffler, who, accompanied by Heckstall, picked him up shortly thereafter in a rental car. Telephone records also revealed that the TRAC phone called the

victim's cellular telephone at 6:09 A.M. that morning, and the victim's mother testified that she heard the victim say "478 6th Avenue" and told the caller he would be there in 20 minutes. Hoffler, Heckstall and defendant then drove to that location. Defendant recounted that, shortly after Heckstall got out of the car, he heard a gunshot and Heckstall ran back to the car and got in. Hoffler immediately asked Heckstall if the victim was dead and, after Heckstall responded that he had shot the victim in the chest, Hoffler complained that Heckstall had not shot the victim in the head.

Viewing the evidence in a light most favorable to the People (see People v Smith, 6 NY3d 827, 828-829 [2006], cert denied 548 US 905 [2006]), we find the evidence legally sufficient to satisfy the element of intent for both the murder and conspiracy charges. Defendant contends that because he testified that he only helped Hoffler and Heckstall in order to obtain crack cocaine and that he was unaware that the actions he took would assist in the victim's murder, there is no evidence that he shared the intent to kill the victim. We disagree. Intent to commit a crime may be inferred from a defendant's conduct and the surrounding circumstances (see People v Ozarowski, 38 NY2d 481, 489 [1976]). Contrary to defendant's contentions, the trial evidence and, more particularly, his written statements reveal that he played an active and instrumental role in obtaining the murder weapon and the TRAC phone used to lure the victim to his death, and that, prior to obtaining these items, defendant had full knowledge that they would be used to cause the victim's death. This evidence was sufficient to establish defendant's criminal intent. Moreover, defendant's contention that he helped Hoffler and Heckstall out of fear is belied by his trial testimony and written admissions.

In addition, "after weighing the relative probative force of conflicting inferences that may fairly be drawn from the evidence" (People v McKnight, 306 AD2d 546, 547 [2003], lv denied 100 NY3d 596 [2003]; see People v Bleakley, 69 NY2d 490, 495 [1987]), we are unpersuaded that the verdict was against the weight of the evidence. The issue of defendant's intent to aid Hoffler and Heckstall in the slaying of the victim ultimately came down to a credibility determination, and the jury obviously believed the People's witnesses and defendant's prior statements over the trial testimony of defendant. Because we accord great deference to the factfinder's opportunity to view the witnesses, hear the testimony and observe demeanor (see People v Romero, 7 NY3d 633, 645 [2006]; People v Nealon, 36 AD3d 1076, 1078 [2007], lv denied 8 NY3d 988 [2007]), and the

verdict is not clearly unsupported by the record (*see People v Jegede*, 304 AD2d 850, 851 [2003], *lvs denied* 100 NY2d 539 [2003], 3 NY3d 676 [2004]; *People v Maxwell*, 260 AD2d 653, 654 [1999], *lv denied* 93 NY2d 1004 [1999]), we decline to disturb it.

Defendant's remaining contentions do not require extended discussion. His claim that certain remarks made by the prosecutor during summations were improper and prejudicial is unpreserved for our review, as defendant failed to register an objection to any such statements (*see People v Williams*, 46 NY2d 1070, 1071 [1979]; *People v Wilson*, 255 AD2d 612, 614 [1998], *lv denied* 93 NY2d 981 [1999]). Similarly, by failing to object before the jury was discharged or otherwise request further procedures, defendant's contention that County Court should have inquired further into an individual juror's vote upon the guilty verdict is not preserved for appellate review (*see People v Mercado*, 91 NY2d 960, 963 [1998]). In any event, the juror's response was not equivocal so as to require further inquiry by County Court (*compare People v Pickett*, 61 NY2d 773, 774-775 [1984]; *People v Garvin*, 90 AD2d 682, 683 [1982]). Finally, we are unpersuaded that defendant's sentence was harsh and excessive. In light of the violent and heinous nature of the offense which defendant assisted in bringing about, as well as defendant's lengthy criminal history, we find no abuse of County Court's discretion or extraordinary circumstances warranting a modification of the sentence (*see People v Caruso*, 34 AD3d 863, 865 [2006], *lv denied* 8 NY3d 879 [2007]; *People v Gray*, 32 AD3d 1052, 1053 [2006], *lv denied* 7 NY3d 902 [2006]).

Cardona, P.J., Kane and Stein, JJ., concur; Carpinello, J., not taking part. Ordered that the judgment is affirmed.