THIRD DEPARTMENT, AUGUST, 2013

(August 8, 2013)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v SAMUEL MCLEAN, Appellant. [970 NYS2d 332]—

Rose, J.P. Appeal, by permission, from an order of the County Court of Schenectady County (Drago, J.), entered October 17, 2011, which denied defendant's motion pursuant to CPL 440.10 and 440.20 to, among other things, vacate the judgment convicting him of the crimes of murder in the second degree (two counts), attempted robbery in the first degree (three counts), criminal possession of a weapon in the second degree (three counts), criminal possession of a weapon in the third degree (six counts), conspiracy in the fourth degree and criminal mischief in the third degree, after a hearing.

As more fully set forth in our prior decision in this matter (59 AD3d 861 [2009], *affd* 15 NY3d 117 [2010]), defendant pleaded guilty in 2007 to the 2002 murder of Leonder Goodwin. Based on the inadequacy of the record then before us, we were unable to review defendant's argument that his right to counsel was violated by the police in 2006 when two detectives traveled to the correction facility where he was then imprisoned on an unrelated robbery charge and took his inculpatory statement regarding the shooting of Goodwin. After the Court of Appeals affirmed (15 NY3d 117 [2010]), defendant moved to, among other things, vacate the judgment pursuant to CPL 440.10, again asserting that his right to counsel had been violated. He also argued that he had been denied meaningful representation because his trial counsel did not raise this issue. Following a 2011 hearing and the development of a full record, County Court denied the motion.

Defendant now appeals, with our permission, arguing that his right to counsel with respect to the murder charges indelibly attached in 2003 when Steven Kouray, the Assistant Public Defender assigned to represent him in connection with the unre-

lated robbery charge, contacted the Schenectady County District Attorney's office seeking a cooperation agreement. Kouray's proposal, made at defendant's request, was that defendant would receive a reduced sentence on his plea of guilty to the robbery charge in exchange for information regarding the Goodwin shooting. The evidence adduced at the 2011 hearing established that, in connection with the cooperation agreement in 2003, Kouray accompanied defendant while the latter spent two or three hours giving a statement to police detectives John Sims, the lead investigator in the Goodwin case, and Michael Brown concerning the Goodwin shooting. Kouray later accompanied defendant while he viewed a photo array with Sims and Brown, showed them where to look for the weapon and testified before the grand jury investigating the shooting. Ultimately, however, the People determined that the information provided by defendant was not helpful to their investigation and he did not receive any benefit from the cooperation agreement when he was sentenced on the robbery conviction in 2004.

In 2006, with the homicide still unsolved, the District Attorney directed Sims to requestion defendant after first asking Kouray if he continued to represent defendant. Sims and Brown then met with Kouray at the latter's office. Sims testified that he told Kouray he wanted to talk to defendant about "the Goodwin case" and, when he asked Kouray if he still represented defendant, Kouray responded that he was not representing defendant and "you can go talk to him if you want to." Although Kouray testified that he did not believe Sims told him that he wanted to talk to defendant about "the Goodwin murder," Sims agreed that he did not use the word "murder" during their 2006 meeting.[1] Kouray conceded that Sims' recollection was likely to be better than his own. Kouray also agreed that he told Sims that he did not represent defendant and that "[defendant had] been sentenced[, t]he robbery case is over." According to Kouray, his representation of defendant in the homicide investigation was "part of the sentencing negotiation[ ] . . . for [a] reduced sentence on his robbery plea" and, at the time of his 2006 meeting with Sims and Brown, he did not believe that he continued to represent defendant.

Although Kouray clearly participated in the homicide investigation in 2003 and the police were well aware that he had entered into it as defendant's counsel, the parties agree that there was a genuine lack of clarity, prior to police questioning

---

1. At the time, Goodwin's shooting was still under investigation; no murder charge had been brought against defendant.

Kouray, surrounding the question of whether that representation was limited to the cooperation agreement and had terminated once defendant was sentenced in the robbery case. It is well settled that where, as here, there is any ambiguity as to whether the defendant is represented by counsel, the burden rests squarely on the police to resolve that ambiguity prior to questioning (*see People v West*, 81 NY2d 370, 376 [1993]; *People v Callicutt*, 85 AD3d 1326, 1328 [2011], *lv denied* 18 NY3d 992 [2012]; *People v Felder*, 301 AD2d 458, 459 [2003]). Here, before questioning defendant in 2006, Sims and Brown met with Kouray, who told them unequivocally that he no longer represented defendant. Inasmuch as the police fulfilled their obligation to resolve the ambiguity by determining that Kouray's representation of defendant had terminated prior to questioning him, County Court did not err in concluding that defendant's right to counsel had not been violated (*see People v Booker*, 53 AD3d 697, 701 [2008], *lv denied* 11 NY3d 853 [2008]; *compare People v Callicutt*, 85 AD3d at 1329).

We are unpersuaded by defendant's remaining contentions to the effect that, if Sims and Brown had done more, they would have discovered his belief in the existence of an ongoing attorney-client relationship with Kouray. Defendant's reliance on *People v Callicutt* (*supra*) for the proposition that Kouray continued to represent him in the homicide investigation is misplaced. Although Kouray testified, in hindsight, that he came to believe that he still represented defendant based upon his reading of our 2011 decision in *Callicutt*, our holding in that case does not support such a conclusion. While the facts in *Callicutt* are similar, our determination that the defendant's right to counsel was violated in that case was based on the failure of the police to take any steps at all to resolve the ambiguity surrounding the question of whether counsel still represented the defendant prior to their interrogation of him (*id.* at 1328-1329).

Again in hindsight, Kouray also testified that if the investigators had informed him that they intended to question defendant about the Goodwin homicide, he would not have allowed it. Sims, on the other hand, testified that he told Kouray at their 2006 meeting that the investigators wanted to talk to defendant about the Goodwin case and Kouray told them to do what they had to do. While County Court fully credited both witnesses and did not expressly address this inconsistency, Kouray himself conceded that Sims' memory of the 2006 meeting was better than his. Defendant argues that it is simply not believable that an experienced defense attorney would have allowed such questioning if he knew that the investigators intended to talk to

his client.[2] Such an argument, however, incorrectly assumes that Kouray believed that he represented defendant at the time that the investigators met with him at his law office in 2006. Kouray conceded that that was not what he believed at the time. Kouray's hearing testimony that he would not have allowed defendant to be questioned may have been influenced by his new, albeit mistaken, belief that our recent decision in *Callicutt* meant that his obligation to represent defendant in the homicide investigation continued long after the robbery case had concluded.

In our view, it is significant that County Court, in fully crediting the testimony of both Sims and Kouray, did not find that the investigators had been "fast and loose" when speaking with Kouray. Nor do we detect any improper gamesmanship in the District Attorney's direction to Sims and Brown to determine, in light of Kouray's prior participation in the homicide investigation, whether his representation of defendant extended in any way beyond the robbery. Nor can we agree with defendant's argument that Sims' conceded failure to tell Kouray that defendant had become a targeted suspect in the Goodwin shooting rose to the level of bad faith or somehow made Kouray's statement to the investigators that he did not represent defendant unclear or uncertain. Having received an unequivocal answer from Kouray that he no longer represented defendant, we cannot conclude that the police had an obligation to inquire further (*see People v Booker*, 53 AD3d at 701).

Defendant's further argument that Kouray could not unilaterally withdraw from representing him on the homicide is similarly misplaced because it, too, presupposes that Kouray's representation of defendant on the homicide investigation was independent of his representation on the robbery. The hearing testimony does not support such a conclusion, and there is no real question that an attorney's representation of a client may be for a limited purpose (*see e.g. People v Marrero*, 51 NY2d 56, 58 [1980]; *People v Callicutt*, 85 AD3d at 1330). As we have noted, County Court credited the testimony of both Sims and Kouray in support of its conclusion that Kouray temporarily represented defendant in the homicide investigation for the limited purpose of obtaining a lesser sentence in the robbery

---

**2.** It seems equally difficult to believe that Kouray would not recall the prior involvement of these same two investigators in the Goodwin case given his extensive dealings with them in connection with defendant's cooperation agreement. Further, given those extensive dealings, it is unlikely that Sims would believe that he and Brown could talk to Kouray about defendant without mentioning the Goodwin case.

case. Stated differently, Kouray did not unilaterally withdraw from the representation. Rather, it terminated when defendant was sentenced on the robbery conviction. In any event, our inquiry is limited to whether the police were aware of any continued representation, not whether Kouray's representation actually continued (*see People v Marrero*, 51 NY2d at 59; *People v Callicutt*, 85 AD3d at 1330; *People v Booker*, 53 AD3d at 700-701; *compare People v Cotton*, 280 AD2d 188, 192-193 [2001], *lv denied* 96 NY2d 827 [2001]).

We also find no merit to defendant's argument that his 6th Amendment right to counsel was violated. That right is less expansive than the indelible right to counsel recognized in New York (*see People v Bing*, 76 NY2d 331, 338-339 [1990]) and, as it only attaches when "adversary judicial proceedings have been initiated" (*Kirby v Illinois*, 406 US 682, 688 [1972]), it had not attached here at the time that defendant was questioned in 2006. Finally, inasmuch as defendant's claim that he was denied the effective assistance of counsel is based solely on the failure to raise the right to counsel issue, it is meritless (*see People v Whitehead*, 23 AD3d 695, 697 [2005], *lv denied* 6 NY3d 840 [2006]; *People v Douglas*, 296 AD2d 656, 657-658 [2002], *lv denied* 99 NY2d 535 [2002]).

Spain and Egan Jr., JJ., concur.

McCarthy, J. (dissenting). Because I find, on two separate grounds, that the police did not meet their burden of resolving ambiguity regarding defendant's representation by counsel prior to questioning him, thereby violating his indelible right to counsel, I respectfully dissent.

The right to counsel is a "cherished principle" that requires "[t]he highest degree of [judicial] vigilance . . . to safeguard it" (*People v West*, 81 NY2d 370, 373 [1993] [internal quotation marks and citations omitted]). Defendant's right to counsel with respect to the Leonder Goodwin murder investigation indelibly attached in 2003 and was not, as characterized by the majority, limited for purposes of sentencing in connection with the robbery charge. The record demonstrates that attorney Steven Kouray accompanied defendant while he gave a witness statement to police detectives John Sims and Michael Brown about the Goodwin murder, during which Kouray advised defendant not to answer certain questions and conferred with him a number of times before defendant answered questions posed to him. Kouray also was present when defendant viewed a photo array, showed the police where to look for the murder weapon and testified before the grand jury investigating the murder. These affirmative and direct actions taken by Kouray "suf-

ficiently identified [his] professional interest in the homicide investigation and signified" that he had entered the proceedings to represent defendant on that matter (*People v Callicutt*, 85 AD3d 1326, 1328 [2011], *lv denied* 18 NY3d 992 [2012] [internal quotation marks and citations omitted]; *see People v Ramos*, 40 NY2d 610, 616 [1976]; *People v Booker*, 53 AD3d 697, 699 [2008], *lv denied* 11 NY3d 853 [2008]; *see also People v McLean*, 15 NY3d 117, 123-124 [2010, Jones, J., dissenting]).

"Once a lawyer has entered a criminal proceeding representing a defendant in connection with criminal charges under investigation, the defendant in custody may not waive his [or her] right to counsel in the absence of the lawyer" (*People v Hobson*, 39 NY2d 479, 481 [1976] [citation omitted]; *accord People v Marrero*, 51 NY2d 56, 58 [1980]; *see People v McLean*, 15 NY3d at 120), and the mere passage of time does not eliminate a defendant's indelible right to counsel (*see People v West*, 81 NY2d at 379-380). Given that defendant's right to counsel indelibly attached in the murder investigation, "the police bore the burden of determining whether the representation continued" and were obligated to resolve any ambiguity surrounding such representation "prior to questioning defendant on that same matter" (*People v Callicutt*, 85 AD3d at 1329; *see People v West*, 81 NY2d at 376; *People v Marrero*, 51 NY2d at 59).

While generally this Court defers to the trial court's credibility determinations (*see People v Fournier*, 77 AD3d 1201, 1202 [2010]; *People v Bodah*, 67 AD3d 1195, 1196 [2009], *lv denied* 14 NY3d 838 [2010]), here, County Court credited the testimonies of both Kouray and Sims, notwithstanding the fact that they are inconsistent regarding the nature of the police inquiry into Kouray's representation of defendant. When asked by Sims whether he still represented defendant, Kouray responded that "[defendant has] been sentenced. The robbery case is over." This response clearly reflects that Kouray was referring to the robbery charge. He testified that the investigators never clarified or informed him that they sought to question defendant about the Goodwin murder investigation. Kouray testified that if they had, he would not have allowed it. In addition, the People conceded at oral argument—consistent with Sims' testimony— that the investigators failed to inform Kouray that additional information had developed in the Goodwin murder investigation and that defendant was now a suspect.

Contrary to Kouray's testimony, Sims testified that he informed Kouray that he and Brown wanted to talk to defendant about the Goodwin murder investigation. However, he admitted that he did not use the word "murder" when talking

to Kouray, instead stating that they wanted to talk to defendant about the "Goodwin case" and Sims thought that Kouray must have known that this referred to a murder case because Goodwin was a homicide victim.[3] Sims further testified that Kouray told the investigators, "You can go talk to [defendant] if you want to," and that Kouray probably would have given him written permission to speak to defendant had Sims asked for something in writing. Regarding that testimony, it is incredible to believe that this seasoned defense attorney[4] would explicitly give the police his blessing to question an uncounseled client or former client, even with the limited information that was provided. Under these circumstances, given the coy questioning and lack of candor by the investigators, the investigators acted in bad faith or without sufficient deference to defendant's rights when asking Kouray about his representation of defendant (see generally People v Bertolo, 65 NY2d 111, 120 [1985]).[5] Accordingly, I disagree with the majority's conclusion that the investigators fulfilled their obligation to resolve—in good faith—the ambiguity surrounding Kouray's representation of defendant in the murder investigation, and I conclude that the questioning of defendant violated his indelible right to counsel.

Even if I were to agree with the majority's finding that the police properly questioned Kouray about his representation of defendant, I would reverse on another ground; namely, an attorney's unilateral statement that he or she no longer represents a defendant does not allow the police to disregard that defendant's previously invoked right to counsel (compare People v Lopez, 16 NY3d 375, 383 n 4 [2011], People v Rosa, 65 NY2d 380, 385-386 [1985], People v Thorsen, 20 AD3d 595, 597 [2005], lv denied 5 NY3d 857 [2005], and People v Calcaterra, 127 AD2d 778, 779 [1987], lv denied 70 NY2d 644 [1987], with People v Booker, 53 AD3d at 700-701).

It is well settled that after the indelible right attaches, it may

---

**3.** This discussion between Sims and Kouray took place in 2006, three years after Kouray accompanied defendant in his discussions regarding the Goodwin murder and four years after the murder itself. This lapse in time makes it less likely that Kouray would necessarily remember or recognize the victim's name.

**4.** Kouray has been an attorney for more than 35 years, and has held the positions of Deputy Public Defender and Conflict Defender for Schenectady County.

**5.** I am not in any way implying that the District Attorney engaged in any improper behavior. He correctly directed the investigators to determine whether Kouray still represented defendant prior to questioning him, and only proceeded with the case after receiving information from the investigators regarding the lack of representation.

only be waived in the presence of counsel (*see People v Marrero*, 51 NY2d at 58; *People v Ramos*, 40 NY2d at 614). Nevertheless, in *People v Booker* (*supra*), this Court held that there is no obligation on the part of police—if they have clearly been told by an attorney that the representation has ended—to seek assurance that the defendant is aware of the withdrawal, and that requiring further inquiry by the police regarding actual representation would be unreasonable (*id.* at 701). I cannot reconcile, on the one hand, the mandate to protect a defendant's indelible right to counsel with, on the other hand, cases that have allowed questioning when an attorney unilaterally ends representation without the defendant's knowledge. It is illogical to hold that an attorney can terminate an attorney-client relationship outside the defendant's presence and without his or her knowledge, which then results in the waiver of the defendant's previously invoked right to counsel, whereas a defendant cannot waive his or her own indelibly attached right to counsel except in the presence of counsel.

The cherished indelible right to counsel belongs to defendants. "The right to counsel both protects the accused in dealing with the coercive power of the State and insures that any waiver of the right will be knowing and intelligent" (*People v West*, 81 NY2d at 373 [citation omitted]). Although defendant never directly mentioned to the investigating officers in 2006 that Kouray represented him, "[a] defendant 'whose right has indelibly attached has no obligation to keep the police informed as to the status of the attorney-client relationship' " (*People v Callicutt*, 85 AD3d at 1330, quoting *People v West*, 81 NY2d at 376).[6] Courts should not permit an attorney to terminate, unilaterally and without a defendant's knowledge, a right that has indelibly attached for the benefit and protection of a defendant.[7]

It is not unreasonable to require the police to ask one single question of a defendant who they know was represented, namely, "Are you still represented on this matter by the same

---

**6.** Defendant did ask the officers if they had been to see Kouray and, upon receiving an affirmative response, asked how Kouray was doing. These questions and responses could have led defendant to believe that Kouray—who defendant thought was still his counsel—approved of the questioning by those officers.

**7.** While counsel in the cited cases and the present case apparently either terminated representation or believed that representation ceased for legitimate reasons, such as the lapse of time without contact or a perceived conflict of interest, one can imagine an attorney informing police that he or she no longer represents a defendant for less honorable reasons, such as the defendant's failure to timely pay for legal services. Rather than leaving a defendant at the mercy of another, the defendant's rights can be protected through a simple question posed to the defendant himself or herself.

attorney?," or even the more general question, "Do you already have an attorney representing you on this matter?" This does not require a separate police investigation on the representation issue; it merely entails asking a simple question of the defendant who has already been brought in for questioning and advised of his or her *Miranda* rights (*see People v Lucarano*, 61 NY2d 138, 147 [1984]; *People v Thorsen*, 20 AD3d at 597; *compare People v Grice*, 100 NY2d 318, 324 [2003]). Indeed, while noting that it is most logical for police to begin their inquiry regarding representation with the defendant himself or herself, the Court of Appeals stated that "a simple inquiry of the defendant is not an unrealistic burden to place on the authorities" (*People v Rosa*, 65 NY2d at 385-386; *see People v Lucarano*, 61 NY2d at 147; *see also People v Calcaterra*, 127 AD2d at 779 [stating that police are entitled to end their inquiry in reliance on a defendant's statement that he or she is not represented]; *compare People v Booker*, 53 AD3d at 701). The People should bear "the burden of proving that [the] *defendant and the interrogating officer* knew that [the] defendant was no longer represented at the time [the] defendant's statement was made and that [the] defendant, in the presence of counsel, voluntarily and intelligently waived further representation. To hold otherwise would be to substitute the term 'transitory' for the term 'indelible' " (*People v Cotton*, 280 AD2d 188, 191 [2001], *lv denied* 96 NY2d 827 [2001] [emphasis added]).

Here, the police did not ask defendant himself about any continuation of representation. Thus, the police did not fulfill their obligation to resolve any ambiguity regarding representation (*see People v West*, 81 NY2d at 376; *People v Callicutt*, 85 AD3d at 1329; *People v Cotton*, 280 AD2d at 191). Consistent with the courts' obligation to protect a defendant's cherished right to counsel, and assure that such right not be manipulated through gamesmanship, defendant would have been entitled to suppression of his statement had this argument been raised by his trial counsel. Because trial counsel did not raise this meritorious issue, defendant was deprived of the effective assistance of counsel and a fair trial (*see People v Carnevale*, 101 AD3d 1375, 1378 [2012]).[8] Accordingly, his CPL 440.10 motion should have been granted (*see* CPL 440.10 [1] [h]).

Ordered that the order is affirmed.

_____

8. Although it may seem like a reasonable strategy for an attorney to forgo such an argument based on this Court's holding in *People v Booker* (53 AD3d at 701), that case was not decided until nearly six months after defendant's conviction in January 2008. Under case law existing prior to the time of that conviction, including cases from the Court of Appeals, this argument was certainly viable and should have been raised.