Rose, J.E
Appeal, by permission, from an order of the County Court of Schenectady County (Drago, J.), entered October 17, 2011, which denied defendant’s motion pursuant to CPL 440.10 and 440.20 to, among other things, vacate the judgment convicting him of the crimes of murder in the second degree (two counts), attempted robbery in the first degree (three counts), criminal possession of a weapon in the second degree (three counts), criminal possession of a weapon in the third degree (six counts), conspiracy in the fourth degree and criminal mischief in the third degree, after a hearing.
As more fully set forth in our prior decision in this matter (59 AD3d 861 [2009], affd 15 NY3d 117 [2010]), defendant pleaded guilty in 2007 to the 2002 murder of Leonder Goodwin. Based on the inadequacy of the record then before us, we were unable to review defendant’s argument that his right to counsel was violated by the police in 2006 when two detectives traveled to the correction facility where he was then imprisoned on an unrelated robbery charge and took his inculpatory statement regarding the shooting of Goodwin. After the Court of Appeals affirmed (15 NY3d 117 [2010]), defendant moved to, among other things, vacate the judgment pursuant to CPL 440.10, again asserting that his right to counsel had been violated. He also argued that he had been denied meaningful representation because his trial counsel did not raise this issue. Following a 2011 hearing and the development of a full record, County Court denied the motion.
Defendant now appeals, with our permission, arguing that his right to counsel with respect to the murder charges indelibly attached in 2003 when Steven Kouray, the Assistant Public Defender assigned to represent him in connection with the unre *671 lated robbery charge, contacted the Schenectady County District Attorney’s office seeking a cooperation agreement. Kouray’s proposal, made at defendant’s request, was that defendant would receive a reduced sentence on his plea of guilty to the robbery charge in exchange for information regarding the Goodwin shooting. The evidence adduced at the 2011 hearing established that, in connection with the cooperation agreement in 2003, Kouray accompanied defendant while the latter spent two or three hours giving a statement to police detectives John Sims, the lead investigator in the Goodwin case, and Michael Brown concerning the Goodwin shooting. Kouray later accompanied defendant while he viewed a photo array with Sims and Brown, showed them where to look for the weapon and testified before the grand jury investigating the shooting. Ultimately, however, the People determined that the information provided by defendant was not helpful to their investigation and he did not receive any benefit from the cooperation agreement when he was sentenced on the robbery conviction in 2004.
In 2006, with the homicide still unsolved, the District Attorney directed Sims to requestion defendant after first asking Kouray if he continued to represent defendant. Sims and Brown then met with Kouray at the latter’s office. Sims testified that he told Kouray he wanted to talk to defendant about “the Goodwin case” and, when he asked Kouray if he still represented defendant, Kouray responded that he was not representing defendant and “you can go talk to him if you want to.” Although Kouray testified that he did not believe Sims told him that he wanted to talk to defendant about “the Goodwin murder,” Sims agreed that he did not use the word “murder” during their 2006 meeting.[1] Kouray conceded that Sims’ recollection was likely to be better than his own. Kouray also agreed that he told Sims that he did not represent defendant and that “[defendant had] been sentencedt, t]he robbery case is over.” According to Kouray, his representation of defendant in the homicide investigation was “part of the sentencing negotiation[ ] . . . for [a] reduced sentence on his robbery plea” and, at the time of his 2006 meeting with Sims and Brown, he did not believe that he continued to represent defendant.
Although Kouray clearly participated in the homicide investigation in 2003 and the police were well aware that he had entered into it as defendant’s counsel, the parties agree that there was a genuine lack of clarity, prior to police questioning *672 Kouray, surrounding the question of whether that representation was limited to the cooperation agreement and had terminated once defendant was sentenced in the robbery case. It is well settled that where, as here, there is any ambiguity as to whether the defendant is represented by counsel, the burden rests squarely on the police to resolve that ambiguity prior to questioning (see People v West, 81 NY2d 370, 376 [1993]; People v Callicutt, 85 AD3d 1326, 1328 [2011], lv denied 18 NY3d 992 [2012]; People v Felder, 301 AD2d 458, 459 [2003]). Here, before questioning defendant in 2006, Sims and Brown met with Kouray, who told them unequivocally that he no longer represented defendant. Inasmuch as the police fulfilled their obligation to resolve the ambiguity by determining that Kouray’s representation of defendant had terminated prior to questioning him, County Court did not err in concluding that defendant’s right to counsel had not been violated (see People v Booker, 53 AD3d 697, 701 [2008], lv denied 11 NY3d 853 [2008]; compare People v Callicutt, 85 AD3d at 1329).
We are unpersuaded by defendant’s remaining contentions to the effect that, if Sims and Brown had done more, they would have discovered his belief in the existence of an ongoing attorney-client relationship with Kouray. Defendant’s reliance on People v Callicutt (supra) for the proposition that Kouray continued to represent him in the homicide investigation is misplaced. Although Kouray testified, in hindsight, that he came to believe that he still represented defendant based upon his reading of our 2011 decision in Callicutt, our holding in that case does not support such a conclusion. While the facts in Callicutt are similar, our determination that the defendant’s right to counsel was violated in that case was based on the failure of the police to take any steps at all to resolve the ambiguity surrounding the question of whether counsel still represented the defendant prior to their interrogation of him (id. at 1328-1329).
Again in hindsight, Kouray also testified that if the investigators had informed him that they intended to question defendant about the Goodwin homicide, he would not have allowed it. Sims, on the other hand, testified that he told Kouray at their 2006 meeting that the investigators wanted to talk to defendant about the Goodwin case and Kouray told them to do what they had to do. While County Court fully credited both witnesses and did not expressly address this inconsistency, Kouray himself conceded that Sims’ memory of the 2006 meeting was better than his. Defendant argues that it is simply not believable that an experienced defense attorney would have allowed such questioning if he knew that the investigators intended to talk to *673 his client.[2] Such an argument, however, incorrectly assumes that Kouray believed that he represented defendant at the time that the investigators met with him at his law office in 2006. Kouray conceded that that was not what he believed at the time. Kouray’s hearing testimony that he would not have allowed defendant to be questioned may have been influenced by his new, albeit mistaken, belief that our recent decision in Callicutt meant that his obligation to represent defendant in the homicide investigation continued long after the robbery case had concluded.
In our view, it is significant that County Court, in fully crediting the testimony of both Sims and Kouray, did not find that the investigators had been “fast and loose” when speaking with Kouray. Nor do we detect any improper gamesmanship in the District Attorney’s direction to Sims and Brown to determine, in light of Kouray’s prior participation in the homicide investigation, whether his representation of defendant extended in any way beyond the robbery. Nor can we agree with defendant’s argument that Sims’ conceded failure to tell Kouray that defendant had become a targeted suspect in the Goodwin shooting rose to the level of bad faith or somehow made Kouray’s statement to the investigators that he did not represent defendant unclear or uncertain. Having received an unequivocal answer from Kouray that he no longer represented defendant, we cannot conclude that the police had an obligation to inquire further (see People v Booker, 53 AD3d at 701).
Defendant’s further argument that Kouray could not unilaterally withdraw from representing him on the homicide is similarly misplaced because it, too, presupposes that Kouray’s representation of defendant on the homicide investigation was independent of his representation on the robbery. The hearing testimony does not support such a conclusion, and there is no real question that an attorney’s representation of a client may be for a limited purpose (see e.g. People v Marrero, 51 NY2d 56, 58 [1980]; People v Callicutt, 85 AD3d at 1330). As we have noted, County Court credited the testimony of both Sims and Kouray in support of its conclusion that Kouray temporarily represented defendant in the homicide investigation for the limited purpose of obtaining a lesser sentence in the robbery
*674 case. Stated differently, Kouray did not unilaterally withdraw from the representation. Rather, it terminated when defendant was sentenced on the robbery conviction. In any event, our inquiry is limited to whether the police were aware of any continued representation, not whether Kouray’s representation actually continued (see People v Marrero, 51 NY2d at 59; People v Callicutt, 85 AD3d at 1330; People v Booker, 53 AD3d at 700-701; compare People v Cotton, 280 AD2d 188, 192-193 [2001], lv denied 96 NY2d 827 [2001]).
We also find no merit to defendant’s argument that his 6th Amendment right to counsel was violated. That right is less expansive than the indelible right to counsel recognized in New York (see People v Bing, 76 NY2d 331, 338-339 [1990]) and, as it only attaches when “adversary judicial proceedings have been initiated” (Kirby v Illinois, 406 US 682, 688 [1972]), it had not attached here at the time that defendant was questioned in 2006. Finally, inasmuch as defendant’s claim that he was denied the effective assistance of counsel is based solely on the failure to raise the right to counsel issue, it is meritless (see People v Whitehead, 23 AD3d 695, 697 [2005], Iv denied 6 NY3d 840 [2006]; People v Douglas, 296 AD2d 656, 657-658 [2002], Iv denied 99 NY2d 535 [2002]).
Spain and Egan Jr., JJ., concur.

. At the time, Goodwin’s shooting was still under investigation; no murder charge had been brought against defendant.

. It seems equally difficult to believe that Kouray would not recall the prior involvement of these same two investigators in the Goodwin case given his extensive dealings with them in connection with defendant’s cooperation agreement. Further, given those extensive dealings, it is unlikely that Sims would believe that he and Brown could talk to Kouray about defendant without mentioning the Goodwin case.