[931 NE2d 520, 905 NYS2d 536]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v SAMUEL McLEAN, Appellant.

Argued May 6, 2010; decided June 10, 2010

118

**POINTS OF COUNSEL**

*Danielle Neroni Reilly,* Albany, for appellant. Appellant's right to counsel indelibly attached when his attorney entered the criminal matter under investigation. (*People v West,* 81 NY2d 370; *People v Harris,* 77 NY2d 434; *People v Settles,* 46 NY2d 154; *People v Cunningham,* 49 NY2d 203; *People v Di Biasi,* 7 NY2d 544; *People v Grice,* 100 NY2d 318; *People v Hobson,* 39 NY2d 479; *People v Schaeffer,* 56 NY2d 448; *People v Marrero,* 51 NY2d 56; *People v Garofolo,* 46 NY2d 592.)

*Robert M. Carney, District Attorney,* Schenectady (*Gerald A. Dwyer* of counsel), for respondent. I. The record does not contain

sufficient facts to permit review of whether the inculpatory statements of December 11, 2006 were obtained in violation of defendant's right to counsel. (*People v Kinchen*, 60 NY2d 772; *People v Samuels*, 49 NY2d 218; *People v Charleston*, 54 NY2d 622; *People v Berezansky*, 229 AD2d 768, 89 NY2d 919; *People v Brown*, 46 AD3d 1128; *People v Marrero*, 51 NY2d 56.) II. Defendant's right to counsel did not attach at the time of his debriefing on an unrelated case as a part of his cooperation agreement upon his plea to a robbery. (*People v West*, 81 NY2d 370; *People v Lyons*, 4 AD3d 549; *People v Brown*, 46 AD3d 1128; *People v Vella*, 21 NY2d 249; *People v Hobson*, 39 NY2d 479; *People v Bing*, 76 NY2d 331; *People v Samuels*, 49 NY2d 218.)

## OPINION OF THE COURT

Smith, J.

We have held that, where a defendant's statement to law enforcement authorities is obtained in violation of his right to counsel, the use of that statement against defendant at trial is an error that may be raised on appeal, even if the issue was not preserved. Appellate review of such an unpreserved error is available, however, only when the error is established on the face of the record. Here, the record is inadequate, and we therefore cannot review the right to counsel issue.

Defendant pleaded guilty to a 16-count indictment charging him with various crimes, including two counts of murder in the second degree, relating to the fatal shooting of Leonder Goodwin on January 27, 2002. On appeal from his conviction, he challenges County Court's refusal to suppress, after a *Huntley* hearing, statements he made at a meeting with two police officers in December 2006. At the *Huntley* hearing, defendant argued that his statements were involuntary, but made no claim that he had been deprived of his right to counsel. He raised a right to counsel claim for the first time in the Appellate Division, which declined to consider it, saying that while the lack of preservation "does not necessarily foreclose defendant from raising this issue on appeal," the record here "is bereft of material evidence sufficient to permit appellate review of this claim" (*People v McLean*, 59 AD3d 861, 864 [3d Dept 2009]). A Judge of this Court granted leave to appeal (12 NY3d 927 [2009]), and we now affirm.

Defendant's argument that he was deprived of his right to counsel is based on the record of the *Huntley* hearing. That

record shows that no lawyer was present at the December 2006 meeting when defendant described his role in the Goodwin homicide to two detectives. However, defendant had talked about the same crime to the same detectives three years earlier, in October 2003, in the presence of his lawyer, Steven Kouray. At that time defendant was awaiting sentencing on an unrelated robbery charge, and had entered a cooperation agreement to supply information about the Goodwin murder in exchange for the chance of a more favorable sentence on the robbery. Defendant claims that his right to counsel indelibly attached at or before the 2003 meetings, and that he therefore could not be questioned again on the same subject in 2006 without a waiver of that right in counsel's presence (*see People v Arthur*, 22 NY2d 325 [1968]; *People v West*, 81 NY2d 370 [1993]).

*Arthur* held that "[o]nce an attorney enters the proceeding, the police may not question the defendant in the absence of counsel unless there is an affirmative waiver, in the presence of the attorney, of the defendant's right to counsel" (22 NY2d at 329). *West* expressed the same rule by saying that "the right to counsel attaches indelibly where an uncharged individual has actually retained a lawyer in the matter at issue" (81 NY2d at 373-374). The parties here dispute whether, at the time of the 2003 meetings, Kouray had entered "the proceeding" or was retained in "the matter at issue"—i.e., whether he then represented defendant in connection with the Goodwin homicide. The People say that Kouray represented defendant only in the robbery case, and was involved in discussions of the murder case only as it affected defendant's robbery sentence; defendant says that this is a spurious distinction, and that Kouray was representing him in both matters. We conclude that we may not resolve the dispute, because the failure to raise the issue in the trial court has resulted in an inadequate record.

We recognized in *Arthur* that right to counsel claims are excepted from the general rule that unpreserved issues cannot be reviewed on appeal (22 NY2d at 329 ["The failure to object . . . on right to counsel grounds is not fatal since we are concerned with the deprivation of a fundamental constitutional right"]). In support of our holding we cited *People v McLucas* (15 NY2d 167, 172 [1965]), where we endorsed the proposition "that no exception is necessary to preserve for appellate review a deprivation of a fundamental constitutional right." Though this sweeping statement is no longer good law (*see People v De Renzzio*, 19 NY2d 45, 50 [1966]; *People v Thomas*, 50 NY2d 467,

473 [1980]), we have continued to follow the holding of *Arthur* that claims like the one made in this case need not be preserved (*People v Kinchen*, 60 NY2d 772, 773 [1983] ["a claimed deprivation of the State constitutional right to counsel may be raised on appeal, notwithstanding that the issue was not preserved by having been specifically raised in a suppression motion or at trial"]; *People v Samuels*, 49 NY2d 218, 221 [1980]; *People v Ermo*, 47 NY2d 863, 865 [1979]; *but cf. id.* at 865-866 [Jasen, J., concurring]; *see also People v Ramos*, 99 NY2d 27, 30 [2002]). On this appeal, no party asks us to depart from this line of cases, and we do not do so.

The *Arthur* exception to the preservation requirement, however, has an important limitation, which we find decisive here. As we said in *Ramos*, the rule "authorizing review of unpreserved constitutional right-to-counsel claims" has been applied "only when the constitutional violation was established on the face of the record" (99 NY2d at 37). Similarly, in *Kinchen* we explained that the exception to the preservation requirement "does not . . . dispense with the need for a factual record sufficient to permit appellate review" (60 NY2d at 773-774). We held the record inadequate in *Kinchen* because, among other reasons, there was no proof in the record "that defendant was represented by counsel in connection with . . . any pending charge" (*id.* at 774).

■ We now make clear that the lack of an adequate record bars review on direct appeal not only where vital evidence is plainly absent, as in *Kinchen*, but wherever the record falls short of establishing conclusively the merit of the defendant's claim. Simple fairness, and respect for orderly procedure, require this stringent approach. Where the right to counsel claim is not raised in the trial court, neither the People nor the trial judge have reason to know that it is in the case. Thus the People may not elicit evidence that is crucial to a decision on the issue; and, even if all the evidence is before it, the trial court may have no reason to make findings of fact relevant to the right to counsel claim. Thus where the record does not make clear, irrefutably, that a right to counsel violation has occurred, the claimed violation can be reviewed only on a post-trial motion under CPL 440.10, not on direct appeal.

■ The record created at the *Huntley* hearing here does not provide an adequate basis for review. We assume, without deciding, that the evidence presented at the hearing would support a holding that Kouray was defendant's lawyer in connection with

the homicide, and that therefore the indelible right to counsel attached. Even on that assumption, we cannot say that no evidence the People might have presented would lead us to hold otherwise. The officers who testified at the hearing were not asked, and did not say, what they knew, and what conclusions they drew, about defendant's relationship with his lawyer. Kouray himself, as the Appellate Division pointed out, did not testify. (We do not consider a later affirmation by Kouray, not part of the record, which was submitted to the Appellate Division with defendant's brief.) We will not speculate on precisely what evidence from the officers, from Kouray or possibly from other sources might serve to rebut any showing that defendant's right to counsel was violated. We are satisfied that such a rebuttal is not impossible, and that is enough to make review on direct appeal inappropriate in this case.

Accordingly, the order of the Appellate Division should be affirmed.

JONES, J. (dissenting). Because I believe defendant's conviction was obtained in violation of his right to counsel, I respectfully dissent.

Defendant was questioned on two occasions concerning a homicide which occurred in 2002. He was first questioned in 2003 in the presence of his attorney. He gave a detailed statement concerning the murder.[1] He was again questioned in 2006 by the same detective but without counsel being present.[2] In 2007, defendant was convicted of numerous charges on a plea of guilty. His plea followed a *Huntley* hearing after which the court ruled that the statement made to the investigating detective in 2006 could be used against him at his trial. Based on these facts, the issue presented here is whether defendant was represented in *this* matter when he was first questioned in 2003. As will be demonstrated below, defendant's plea was obtained in violation of his rights (including the right to counsel) as it was based on a statement made without his attorney being present.

---

1. Defendant pleaded guilty to robbery on August 5, 2003. On October 20, 2003, defendant met with the investigating detective on the Goodwin homicide (Detective Jack Sims) at the Schenectady County District Attorney's Office, and with his attorney (Steven Kouray) present gave a written statement concerning the homicide. Defendant met with the same parties a second time on October 21, 2003. On June 4, 2004, defendant was sentenced for the stated robbery.

2. Defendant, while incarcerated at Great Meadow Correctional Facility, met with Detective Sims and Detective Michael Brown on December 11, 2006. At this time, he gave another written statement on the Goodwin homicide.

At the outset, I agree with the majority's statement of settled law that if defendant was represented by counsel during the initial questioning in 2003 then the subsequent interrogation in 2006 without his attorney being present was in violation of his rights (*see People v Arthur*, 22 NY2d 325 [1968]; *People v West*, 81 NY2d 370 [1993]). There is no dispute that defendant was represented by counsel when he was questioned on a homicide in 2003. There is, however, some dispute as to whether at the time of the first statement he was represented on the robbery to which he had already pleaded guilty, on the murder which was under investigation, or both. Relying on *People v Kinchen* (60 NY2d 772 [1983]), the majority concludes that the record is inadequate to establish whether this defendant was in fact represented on the homicide by attorney Steven Kouray in 2003. I disagree and would hold that the record is more than adequate to establish that attorney Kouray represented defendant on the homicide in 2003.

The record clearly demonstrates the following. Defendant was a suspect in the Goodwin homicide as early as 2002 based on information the Schenectady police received from a third party. In other words, defendant was a suspect in the Goodwin homicide five years before he was actually convicted of it. More significantly, defendant was a suspect in that homicide nearly a year before his first written statement was taken.

The record contains two documents dated October 20, 2003 which support the position that defendant was being actively represented on the homicide. The date is significant because defendant had already entered a plea of guilty on the robbery charge. In the first document, entitled "Advice of Rights," defendant acknowledges and signs several statements on a printed form containing the *Miranda* warnings.[3] That the police advised defendant of his rights under *Miranda v Arizona* (384 US 436

---

3. The "Advice of Rights" form contained in the record states:
   "Before we ask you any questions, you must understand your rights.
   • You have the right to remain silent.
   • Anything you say can be used against you in court.
   • You have the right to talk to a lawyer for advice before we ask you any questions and to have him with you during any questioning.
   • If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish, at no charge to you.

[1966]) is telling. Simply put, there is no need to advise someone who is merely a witness of these rights. The fact that defendant was required to sign this form indicates he was in jeopardy and a suspect in the ongoing murder investigation.

In addition, on that date, defendant, after being advised of his rights under *Miranda*, agreed to be questioned concerning the murder expecting that it might be helpful to his sentence on the robbery. Defendant simultaneously signed a statement which began as follows:

> "I Sam[ue]l McLean being duly sworn, deposes and says: Im in the Schenectady County District Attorneys Office with my attorney Steven Kouray. Mr Sims you have read my rights to me and I understand them and Im willing to give you this statement. Mr Sims we will be talking about what I know of a murder that happened back on January 27th of 2002."

The record also contains the transcript of Detective Sims' testimony at the 2006 *Huntley* hearing. A portion of the detective's testimony makes reference to an exchange between the detective and defendant after the *Miranda* warnings were administered on October 20, 2003. During the direct examination of Detective Sims, he was asked, "After the defendant acknowledged that he understood the warnings as you read them to him from this form, what happened next?" In response, Detective Sims stated: "The Miranda warning was completed. We now discussed what he had witnessed *or if he had participated in the homicide* of Leonder Goodwin and we talked at length about the incident" (emphasis added).

At the *Huntley* hearing, Detective Sims was also asked about defendant's interaction with his attorney (Kouray). The detective testified that they conferred, read documents together and that defendant constantly consulted with Mr. Kouray during the interview.

Accordingly, not only do the foregoing documents establish that defendant was a suspect in the Goodwin homicide, they clearly illustrate attorney Steven Kouray's presence and that

- If you decide to answer questions now without a lawyer present, you will still have the right to stop answering at any time until you talk to a lawyer.
- Do you understand what I have just said to you?"

defendant was represented by him in the homicide investigation independent of the robbery case to which he had already entered a guilty plea. Since defendant was represented by counsel in the murder case when he gave the 2003 statements, the subsequent statement in 2006, made without counsel present, should have been suppressed (*see People v Arthur, supra*).

The majority, citing *People v Kinchen*, posits that the record before this Court is inadequate to determine whether defendant was represented on the homicide and points to the fact that "right to counsel" was never raised at the trial level. In *Kinchen*, the defendant gave a statement after receiving *Miranda* warnings which was later challenged. This Court held that although the defendant had an open warrant, there was no evidence that the police knew of the warrant before taking the statement and no evidence that the police knew if he was represented by counsel or had an open case.

Here, by contrast (and given the foregoing), the record is so detailed that it clearly contains evidence that the police knew that defendant was represented by counsel on the Goodwin homicide as the same detective was present at both interrogations. Thus, the majority's conclusion that this record is "inadequate" on the question of legal representation is plainly inconsistent with settled case law. Stated differently, in a case where there is an adequate record on the question of legal representation (i.e., the right to counsel attached), as here, this Court's jurisprudence provides that a claimed deprivation of said right may be raised on appeal, notwithstanding that the claim was not preserved at the suppression hearing or before the trial court.

Based on the foregoing, defendant's conviction and sentence should be reversed and the matter remitted to County Court for further proceedings.

Judges GRAFFEO, READ and PIGOTT concur with Judge SMITH; Judge JONES dissents and votes to reverse in a separate opinion in which Chief Judge LIPPMAN and Judge CIPARICK concur.

Order affirmed.