■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DOMINIQUE BOYD, Appellant. [58 NYS3d 43]—

Judgment, Supreme Court, New York County (Arlene D. Goldberg, J.), rendered July 18, 2014, convicting defendant, after a jury trial, of criminal possession of a weapon in the second degree, attempted assault in the first degree, reckless endangerment in the second degree, and two counts of conspiracy in the fourth degree, and sentencing him to an aggregate term of 7$^{1}/_{2}$ years, unanimously affirmed.

The court providently exercised its discretion in permitting three officers who were familiar with defendant, but were not eyewitnesses, to give lay opinion testimony, as an aid to the jury's identification process, that defendant was the man depicted in surveillance videotapes firing a handgun. This testimony "served to aid the jury in making an independent assessment regarding whether the man in the [videos] was indeed the defendant" (*People v Russell*, 79 NY2d 1024, 1025 [1992]), because there was "some basis for concluding that the witness[es] [were] more likely to correctly identify the defendant from the [videos] than [was] the jury" (*People v Sanchez*, 95 AD3d 241, 249 [1st Dept 2012], *affd* 21 NY3d 216 [2013]). The videos were of marginal quality and the police officers' narration of the videos, as persons familiar with defendant and his personal characteristics, most notably a distinctive manner of walking, was helpful both in identifying him and explaining to the jury the rapid-paced and fleeting images of persons running back and forth in footage drawn from three video cameras depicting three overlapping areas around the scene of the shooting. Furthermore, such testimony is "commonly allowed in cases where the defendant has changed his or her appearance since being photographed or taped, and the witness knew the defendant before that change of appearance" (*People v Coleman*, 78 AD3d 457, 458 [1st Dept 2010], *lv denied* 16 NY3d 829 [2011]), and in this case there was some evidence of a change in defendant's appearance. We thus find it unnecessary to decide whether such evidence is an indispensable prerequisite to the admission of the type of testimony at issue. The court also providently exercised its discretion under the circumstances in permitting testimony on this subject from three officers, and defendant's argument regarding cumulativeness is unavailing.

To the extent defendant is making a legal sufficiency claim, it is unpreserved and we decline to review it in the interest of justice. As an alternative holding, we reject it on the merits. We also find that the verdict was not against the weight of the evidence (*see People v Danielson*, 9 NY3d 342, 348-349 [2007]). In this case where defendant appears on the above-discussed videos to be firing a pistol, but no weapon was recovered, defendant challenges his weapon possession conviction on the ground that the evidence failed to establish that he fired an operable firearm, loaded with live ammunition. However, there was ample circumstantial evidence in that regard (*see People v Samba*, 97 AD3d 411, 414 [1st Dept 2012], *lv denied* 20 NY3d 1065 [2013]). In addition to extensive background information demonstrating that this incident was a gunfight between defendant and a member of a rival gang, the videotape shows a pistol being fired three times, an officer heard gunshots, and the police recovered three cartridge cases at the scene. Defendant's farfetched hypotheses about his having fired, unwittingly or otherwise, an inoperable pistol or blank cartridges are without merit (*see People v Dixon*, 192 AD2d 338 [1st Dept 1993], *lv denied* 81 NY2d 1013 [1993]). Concur—Friedman, J.P., Webber, Gesmer and Kern, JJ.