■ The People of the State of New York, Respondent, v Moussa Doumbia, Appellant. [60 NYS3d 157]—

Appeal from judgment, Supreme Court, New York County (Renee A. White, J.), rendered April 2, 2013, as amended September 11, 2013, convicting defendant, upon his plea of guilty, of attempted robbery in the second degree, and sentencing him to a term of two years, held in abeyance, and the matter remanded for further proceedings in accordance herewith.

The existing, unexpanded record is sufficient to establish that defendant received ineffective assistance of counsel. Defendant was deprived of effective assistance when his counsel failed to advise him that his guilty plea to an aggravated felony would result in mandatory deportation. Since an aggravated felony results in mandatory deportation (*see People v Corporan*, 135 AD3d 485, 485-486 [1st Dept 2016] [a guilty plea to an aggravated felony "triggered mandatory deportation under federal law"]), counsel is under a duty to provide clear advice as to that consequence. It is thus ineffective assistance to advise a noncitizen of a mere risk or possibility that he "could be deported" (*see e.g. United States v Bonilla*, 637 F3d 980, 984 [9th Cir 2011] ["(a) criminal defendant who faces almost certain deportation (for committing an aggravated felony) is entitled to know more than that it is *possible* that a guilty plea could lead to removal; he is entitled to know that it is a virtual certainty"]; *Encarnacion v State*, 295 Ga 660, 663, 763 SE2d 463, 466 [2014] ["where, as here, the law is clear that deportation is mandatory (for the aggravated felony of burglary) . . . an attorney has a duty to accurately advise his client of that fact"

and it is not sufficient that the client is merely advised deportation might occur or was a risk of conviction]).

The dissent misses the point. Contrary to the dissent's assertion, defendant's "unique circumstances" do not change the fact that defendant was subject to mandatory deportation. Lawyers have an affirmative duty to adequately inform their clients about the serious effects of criminal convictions to the extent, and with as much specificity, as possible. Once a defense attorney determines that a client is not a U.S. citizen, the attorney is required to implement the Sixth Amendment protection to which noncitizen defendants are entitled. As *Padilla v Kentucky* (559 US 356 [2010]) clarified, if "the deportation consequence is truly clear" from reading the Immigration and Nationality Act, "the duty to give correct advice is equally clear" (559 US at 369).

In this case, the dissent cannot, and does not, argue that the immigration consequences of defendant's guilty plea to an aggravated felony were truly clear. Instead, the dissent excuses defense counsel's nebulous advice because "it is unclear from the record whether counsel's strategy included pursuing youthful offender status to avoid removal." The dissent also excuses defense counsel's vague advice because defense counsel may have been pursuing other strategy for avoiding the virtual certainty of deportation. In essence, what the dissent proposes is that since there may be avenues available for avoiding even certain deportations, defense counsel only has a duty to inform a noncitizen that there is a risk or possibility that he or she may be deported. Such a standard would not only seriously undermine the Sixth Amendment protection to which noncitizen defendants are entitled, but would also conflict with the concept of a truly informed plea agreement (*see Padilla* at 373-374 ["In sum, we have long recognized that the negotiation of a plea bargain is a critical phase of litigation for purposes of the Sixth Amendment right to effective assistance of counsel"]; *see generally Strickland v Washington*, 466 US 668, 684 [1984] [holding that the right to counsel is protected by the Sixth Amendment, making a claim of ineffective assistance a constitutional claim]).

On remand, defendant should be afforded the opportunity to move to vacate his plea upon a showing that there is a "reasonable probability" that he would not have pleaded guilty had he been made aware of the deportation consequences of his plea (*see People v Peque*, 22 NY3d 168, 199-200 [2013]; *see also People v Corporan*, 135 AD3d 485 [2016]; *People v Chacko*, 99 AD3d 527 [1st Dept 2012], *lv denied* 20 NY3d 1060 [2013]). Ac-

cordingly, we remit for the remedy set forth in *Peque* (22 NY3d at 200-201), and hold the appeal in abeyance for that purpose. Concur—Renwick, Manzanet-Daniels and Kapnick, JJ.

Tom, J.P., dissents in a memorandum as follows: In order to properly review defendant's ineffective assistance claim, a CPL 440.10 motion is needed to establish additional information regarding defense counsel's advice and strategy as to the immigration consequences of defendant's plea agreement. Accordingly, I respectfully dissent.

Defendant's claim that his attorney rendered ineffective assistance by providing inaccurate or misleading advice about the immigration consequences of his plea is unreviewable on direct appeal because it involves matters not reflected in, or fully explained by, the record (*see People v Peque*, 22 NY3d 168, 202 [2013], *cert denied* 574 US —, 135 S Ct 90 [2014]). It was incumbent on defendant to substantiate his claims about his attorney's advice and strategy by filing a CPL 440.10 motion, and the majority fails to address this critical failure.

In any event, the brief interchange between the attorney and the plea court about whether defendant "could be deported" does not necessarily establish ineffective assistance under *Padilla v Kentucky* (559 US 356 [2010]), and the present record does not reveal counsel's reasons for proceeding with the plea after he had spoken with and was awaiting a response from an immigration attorney regarding the legal ramifications thereof. Although the crime for which defendant has been convicted has been held to be an "aggravated felony" triggering removal under 8 USC § 1227 (a) (2) (A) (iii) (*see Brown v Ashcroft*, 360 F3d 346, 353-354 [2d Cir 2004]; *see also United States v Hanson*, 2017 WL 1040403, *2, 2017 US Dist LEXIS 39167, *4-7 [ED NY, Feb. 21, 2017, 15-CR-437 (RRM) (RML)]), defense counsel's advice that defendant "could be deported" does not appear to be incorrect. In particular, while counsel may have believed defendant was deportable, it is unclear from the record whether counsel's strategy included pursuing youthful offender status to avoid removal. Nor does the record reveal whether counsel, in conjunction with the immigration attorney, was considering pursuing or awaiting possible relief under the Convention Against Torture (CAT), given defendant's family background of persecution in his native Ivory Coast (*see De La Rosa v Holder*, 598 F3d 103, 109 [2d Cir 2010] ["Article 3 of the CAT prohibits the deportation of any person to a country where it is more likely than not that '(the individual) would be in danger of being subjected to torture' "]; *Garcia v Attorney General of U.S.*, 271 Fed Appx 160, 160 [3d Cir 2008] [noting that

an aggravated felon could potentially be eligible for relief from removal under CAT]). Counsel may have also been considering that, given his family's history of persecution and the agreed upon sentence of less than five years, defendant could also apply for withholding of removal under 8 USC § 1231 (b) (3) (A) if his life or freedom can be jeopardized based on his "race, religion, nationality, membership in a particular social group, or political opinion" (*see Bromfield v Mukasey*, 543 F3d 1071 [9th Cir 2008]).

The majority ignores the uncertain nature of immigration proceedings and sets forth an impossible standard for counsel given the circumstances in this case. The record establishes that the court and counsel advised defendant that he could be deported should he plead guilty to these crimes. A more fully fleshed out record is needed to determine what else counsel specifically advised the defendant off-the-record and what the immigration attorney may have advised him before he pleaded guilty. However, since counsel potentially knew that the CAT, youthful offender treatment, or 8 USC § 1231 (b) (3) (A) could help defendant avoid deportation, on this record it cannot be expected that counsel would advise defendant it was certain that he would be deported. Indeed, to the contrary, it was not a virtual certainty that defendant would be deported since his age and family circumstances presented the unique aforementioned avenues of relief from deportation. This reality is made clear by the fact that although defendant was released from prison in 2014 he remains in the United States, having been released from ICE detention and placed on postrelease supervision.

Thus, while the crime to which defendant pleaded guilty may have made him presumptively deportable, the ultimate immigration consequences were not truly clear because of defendant's unique circumstances. Contrary to the majority's claim, requiring a CPL 440.10 motion to determine what specific advice counsel gave to defendant or counsel's strategy would not undermine the Sixth Amendment protections to which defendant is entitled.

Thus, given that counsel's advice that defendant "could be deported" is not exactly wrong, and the lack of clarity on the record as to counsel's reasons for proceeding with the plea especially after consultation with an immigration attorney regarding the ramifications of the plea, defendant should be required to raise his ineffective assistance claim in a CPL 440.10 motion to develop a proper record.

Defendant misplaces reliance on *People v Corporan* (135

AD3d 485 [1st Dept 2016]) in support of his claim that he should be allowed to raise his ineffective assistance claim on direct appeal. In *Corporan*, the court failed to warn defendant of the potential for deportation during the initial plea proceeding and it was plain from the record that later, the defense counsel misadvised the defendant regarding the deportation consequences of his plea. Specifically, although the defendant pleaded guilty to drug offenses that triggered mandatory deportation, counsel "undermined the court's warning and understated the potential for deportation" (135 AD3d at 485), circumstances that do not exist on this record. Moreover, the potential reliefs to avoid removal, such as youthful offender status or the CAT were not available to the defendant in *Corporan*.

Since defendant has not made a CPL 440.10 motion, the merits of the ineffectiveness claims may not be addressed on appeal. Moreover, assuming that counsel's advice to defendant was only that he "could be deported," which was the same advice that the court itself provided, defendant has not shown that this constituted ineffective assistance. Accordingly, I would affirm defendant's conviction.