OPINION OF THE COURT
Ralph A. Fabrizio, J.
Earlier this month, in People v Doumbia (153 AD3d 1139, 1139 [1st Dept 2017]), the court announced a strict new rule concerning the advice an attorney in a criminal case is required to give to a defendant who is not a United States citizen, prior to the entry of a plea of guilty. Henceforth, an attorney must tell a defendant that his or her “guilty plea to an aggravated felony [will] result in mandatory deportation.” (Id.) An attorney who merely tells a client who is considering pleading guilty to an aggravated felony (AF) that they could be deported based on that conviction will be found to have been ineffective, requiring reversal of any conviction in which such advice was given and the finding that there was a “reasonable probability” that the defendant would not have pleaded guilty had he or she been given the advice the First Department states must be given. (Id. at 1140.)
Defendant, originally charged in an indictment with multiple counts of rape in the first degree (Penal Law § 130.35 [1]), and other crimes, pleaded guilty on March 30, 2017 to a single lesser count of attempted rape in the third degree. (Penal Law § 130.25 [2].) This sex crime appears to require mandatory deportation because the victim in this case was a child. (See People v Ricketts-Simpson, 130 AD3d 1149, 1151-1152 [3d Dept 2015], citing 8 USC §§ 1101 [a] [43] [A]; 1227 [a] [2] [A] [iii]; 1229b [a] [3].) In any event, defendant would have to register as a sex offender and that itself would result in serious immigration consequences, including removal from the country. (See People v Phipps, 127 AD3d 1500, 1501-1502 [3d Dept *880 2015].) Before the plea was entered on the record, the court, in order not to run afoul of the strict plea bargaining rules in the Criminal Procedure Law, agreed to dismiss all the violent felony charges in the indictment, on the People’s application, joined by defendant, that such dismissal would be in the interest of justice. Thus, defendant, who was facing multiple mandatory and potentially consecutive state prison sentences which would have followed a conviction for the first-degree rape counts, was to be sentenced as negotiated for this misdemeanor charge to only 60 days in jail, followed by the balance of a six year period of probation.
Defendant now moves to vacate the plea. His argument, made in a motion filed prior to the Doumbia decision, was that his retained counsel was not effective because he told him he would not be deported if he pleaded guilty. After the plea was entered, and prior to filing this motion, defendant spoke with trained immigration attorneys at the Bronx Defenders. Defendant then retained new counsel, who filed the current motion. Current counsel states defendant was advised by the immigration attorneys at the Bronx Defenders “that given the count he pled guilty to, he could be deported.” (Undated affirmation of Jon Silveri ¶ 22.) In his own affidavit, defendant claims those same attorneys told him he “will be deported.” No matter what he had been told by other attorneys after the fact, this court must first determine whether, based on the moving papers and the record, the retained attorney who represented defendant told him he would not be deported, or gave him other inaccurate advice about the immigration consequences of pleading guilty to this registerable sex offense.[1]
The minutes of the plea proceedings disclose that defense counsel had discussions with the defendant about all the immigration consequences of this guilty plea, as all criminal defense attorneys are required to do following the ruling in Padilla v Kentucky (559 US 356 [2010]). They further disclose that counsel had discussions with the defendant about the requirement that he register as a sex offender. Defendant also was aware of the harsh sentence he would face if convicted af *881 ter trial of forcible rapes committed on three separate occasions.
The record began with the following statement by the prosecutor: “I was contacted by [defense counsel] who assured me that the defendant would be willing to take an A misdemeanor despite being a sex crime. I was informed today that [the defendant] does not wish to avail himself of that disposition, and as such I am rescinding that offer.” Counsel responded that defendant had become “just impossible for me” and that counsel wanted to consult with “the Bar Association” about representing defendant at trial, or whether counsel’s associate could do so. The court held a bench conference with both attorneys and went back on the record. The People outlined the charges defendant faced, the parameters of the plea offer, and the possible sentence defendant might face if he did not accept the plea offer and went to trial. The People also said, once again, that the plea offer, which had been extended on prior court dates and kept open, would be withdrawn that day. The defendant then told his attorney in the courtroom that he wanted to plead guilty and not go to trial.
Defense counsel then outlined in detail what he told the defendant:
“I told my client that he will get 60 days, but he has already served over 60 days. That on the day of sentence he will get a sentence of 60 days. I told my client that he is going to get six years probation. I told my client that there will be a hearing on the sex offender status, and that . . . the Court cannot give him any assurance on how that will go. I told my client that the Court will ask him—tell him that there might be immigration consequences, but the Court will not tell him whether he will be deported or not deported. And that is my entire conversation with him.”
The court then placed the defendant under oath. Defendant acknowledged that he had retained defense counsel nearly four years earlier, in 2013, and that he and his attorney had discussed all the charges he faced, and any defenses the defendant believed he might have to those charges. Defendant further acknowledged he had discussed the guilty plea with all the sentence parameters placed on the record with his attorney. The court then asked defendant, “are you satisfied with the legal advice and representation that you’ve received from your *882 attorney.” The defendant answered, “Yes.” Defendant stated that he was not being forced to plead guilty. He further acknowledged that there were no other promises being made to him by anyone else in connection with the plea other than the sentencing promise and the fact that he would have to register as a sex offender. The defendant admitted he had attempted to rape a child who was under the age of 17.
The court itself, as required by People v Peque (22 NY3d 168, 175 [2013]), advised the defendant of the immigration consequences of pleading guilty to this crime:
“Now, [defense counsel] stated on the record, and I am required by law to advise every person who pleads guilty to this type of crime . . . that a person who is not a United States citizen and is convicted by plea of this crime will face deportation, exclusion from the country, or the denial of the right to become a citizen at a future date. Do you understand that?”
The defendant replied, “Yes.” The case was adjourned for sentencing.
Defendant was never sentenced. He refused to discuss the case with the Department of Probation as they prepared the probation report. On May 26, 2017, defendant appeared with newly retained counsel, who indicated he would be moving to withdraw the plea. That motion was not filed until August 2, 2017. An affidavit from defendant, and a person who purports to be defendant’s former wife, are annexed. Counsel also annexes what are proffered as undated text messages between defendant and prior counsel, text conversations which appear to have been initiated by defendant at some point after he pleaded guilty. Counsel has not attached an affidavit from prior counsel. The People filed their response on September 15, 2017.
This court would have denied this motion to withdraw defendant’s guilty plea based on his specific allegation that he was told by his attorney that he would not be deported, if the decision were being issued prior to Doumbia. First, defendant provides no affidavit or affirmation from his first attorney either supporting or refuting defendant’s allegations that the attorney told him he would not be deported; such an affidavit is essential in this case. (See People v Taylor, 211 AD2d 603 [1st Dept 1995].) Current counsel’s factual allegations in support of the motion are based only on defendant’s self-serving affidavit and an affidavit from a person who purports to be defendant’s *883 former wife, who claims to have been present during confidential attorney-client conversations only on the day of the plea outside the courtroom. Even the purported text messages between defendant and his first attorney do not support defendant’s claim. If they are true, and complete, and accurate, this court would find the text messages further show that defendant’s first attorney told defendant before he pleaded guilty that, “no one could say you would not be deported.” Despite defendant’s insistence, that attorney also refused to make a motion to withdraw the plea, stating via text, “I’m not going to lie for you what I will tell the judge you need an attorney assigned.” The transcript further shows that defendant made several attempts to have his attorney admit he told him he would not be deported; the attorney never did so.
The court record reveals that defendant received no such advice from counsel. There is no indication that defendant conferred with counsel with his wife present during any of the plea discussions that day. What the transcript shows is that defendant, an undocumented alien, was informed by counsel that he could be deported based on his guilty plea, because no one, including the judge, could tell him one way or another whether he would actually be deported. Ironically, defendant’s current counsel indicates that this was the advice given by the immigration attorneys at the Bronx Defenders.[2] This court certainly advised defendant that anyone who is not a citizen who pleads guilty to this crime “will” face deportation. The moving papers fail to undermine this record or provide any support for the claim that defendant was ever told by prior counsel he would not be deported based on his guilty plea to this crime in this case.
Nonetheless, the record does not allow this court to find that defendant was given the immigration advice the First Department now requires in a case like this. No attorney ever told this defendant that his guilty plea to a sex offense involving a child victim with the requirement that he register as a sex offender would result in his mandatory deportation.[3] Thus, this court finds that defendant did not receive the advice now required in this situation, and for this reason he may be entitled to have his plea vacated. While the court did tell the *884 defendant exactly that, that he “will” be deported based on pleading guilty in this case, and defendant acknowledged he understood what the court said, the court is not, at this time, ruling whether its own “immigration consequences” information, in the context of this motion, makes this plea knowing and voluntary as far as defendant’s awareness of the mandatory immigration consequences of this disposition. That ruling may not ever be necessary. The court is first ordering a hearing to determine whether the defendant truly wants to go to trial in this case in light of all the immigration consequences he faces, the same type of hearing ordered by the majority in Doumbia.
The question about whether this defendant would take this case to trial with full, complete advice about his own deportation prospects is essential, especially given this enormously generous plea bargain under which the defendant will not serve any additional time in prison. First of all, defendant, as an undocumented alien, is subject to deportation at any time. He has no legal right to be in, or remain in, the United States. His actual immigration status is further in peril based on his past criminal record. According to the probation report, defendant has three prior convictions. One is for a conviction for attempted criminal contempt in the second degree, a class B misdemeanor. The defendant received a sentence of a conditional discharge in that matter. His second conviction is for criminal contempt in the second degree, a class A misdemeanor. He was originally sentenced to three years’ probation. However, he violated that probation and received a four month jail sentence. The third prior conviction is for harassment in the second degree, a violation. He received a sentence of a conditional discharge and two days community service. Under immigration law at least two, or possibly all three, of these convictions involve a “crime involving moral turpitude.” A noncitizen, and especially one who is not a lawful permanent resident, faces mandatory deportation consequences if convicted of two crimes of moral turpitude. (People v Richards, 55 Misc 3d 148[A], 2017 NY Slip Op 50715 [U] [App Term, 2d Dept, 9th & 10th Jud Dists 2017]; cf. Peque, 22 NY3d at 187-188.) So, following the holding in Doumbia, it would be prudent for defendant to receive advice about immigration consequences of his favorable plea bargain and allow him to weigh that against the risk of deportation he faces not from this plea, but in light of all factors that would be considered in determining his removability. *885 In short, defendant should be so advised of all mandatory and potential removal scenarios, weigh them against a decision to risk a conviction and a state prison sentence and mandatory deportation or removal from the country based on a conviction for rape in the first degree, an AF, after completing that sentence.

. The People cite People v Haffiz (19 NY3d 883 [2012]) and argue that defendant’s claim about the advice he received from counsel is “hearsay based,” and thus not appropriately the subject for a motion to vacate a guilty plea. Counsel’s actual legal advice is part of the record in this case, and it is that advice which the court is reviewing under the guidelines announced in Doumbia.

. The court has no idea what specific advice those attorneys gave defendant, but has no doubt it was thorough and legally correct.

. No decision in any other department holds otherwise. The Court of Appeals has not to date required such specific advice be given.