People v Gomez (2020 NY Slip Op 04518)





People v Gomez


2020 NY Slip Op 04518


Decided on August 13, 2020


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on August 13, 2020

Friedman, J.P., Gische, Webber, Gesmer, Oing, JJ.


11570 158/15

[*1] The People of the State of New York, Respondent,
v
German Gomez, Defendant-Appellant.


Robert S. Dean, Center for Appellate Litigation, New York (Mark W. Zeno of counsel), for appellant.
Darcel D. Clark, District Attorney, Bronx (Christopher Michael Pederson of counsel), for respondent.



Judgment, Supreme Court, Bronx County (Raymond L. Bruce, J.), rendered October 3, 2016, convicting defendant, upon his plea of guilty, of attempted criminal possession of a weapon in the second degree, and sentencing him to a term of two years, affirmed.
Defendant's claim of ineffective assistance of counsel is not reviewable on direct appeal, because the existing record does not make "irrefutably" clear "that a right to counsel violation has occurred" (People v McLean, 15 NY3d 117, 121 [2010]). Specifically, the existing record does not reveal the advice concerning the immigration consequences of the plea that defendant actually received from his trial counsel. Rather, the record reflects only counsel's representation to the court that he had discussed all "possible consequences" with defendant, counsel's refusal of the court's offer of additional time to research the plea's immigration consequences, and counsel's assurance to the court that "[w]e've looked into everything." Without further development of the record by way of a CPL 440.10 motion, it cannot be determined exactly what discussions were had with defendant regarding the immigration consequences of his plea, including whether counsel mis-advised defendant.
Contrary to defendant's argument, his trial counsel's general representations to the court that defendant had been advised of "all possible consequences" of the plea and that "[w]e've looked into everything" do not establish, under binding precedent of the Court of Appeals, that counsel failed to advise defendant that he would be subject to mandatory deportation based on this plea. The Court of Appeals has held repeatedly that
"the lack of an adequate record bars review on direct appeal not only where vital evidence is plainly absent . . . but wherever the record falls short of establishing conclusively the merit of the defendant's claim . . . . Thus where the record does not make clear, irrefutably, that a right to counsel violation has occurred, the claimed violation can be reviewed only on a post-trial motion under CPL 440.10, not on direct appeal" (McLean, 15 NY3d at 121 [emphasis added]).
Cases in which the record on direct appeal affords irrefutable proof of counsel's ineffectiveness are "exception[al]" (People v Nesbitt, 20 NY3d 1080, 1082 [2013]; see also People v Bell, 48 NY2d 933, 934 [1979] [the record on direct appeal "establishes beyond peradventure . . . clear ineffectiveness of counsel"]).
Only a few weeks ago, the Court of Appeals, in holding that a CPL 440.10 motion was required to create a record to support the defendant's claim that he had received ineffective assistance of counsel, reiterated the principle that review of an ineffectiveness claim on direct appeal requires a record that establishes an irrefutable basis for the claim:
"Generally, the ineffectiveness of counsel is not demonstrable on the main record but rather requires consideration of factual issues not adequately reflected on that record. By codifying the writ of error coram nobis in CPL article 440, the [*2]Legislature crafted a procedure for such scenarios. To that end, article 440 permits defendants to complete the record by putting forth sworn factual allegations in support of a motion to vacate the judgment of conviction and authorizes evidentiary hearings on those motions (CPL 440.10, 440.30), thereby providing a vehicle specifically for the investigation of claims dependent on matters dehors the direct record. Such investigations are vital to a defendant's claim when the record on direct appeal is inadequate to permit the reviewing court to determine whether there was an error that deprived the defendant of the constitutional right to a fair trial. Thus, although there may be some cases in which the trial record is sufficient to permit a defendant to bring an ineffective assistance of counsel claim on direct appeal, in the typical case it would be better, and in some cases essential, that an appellate attack on the effectiveness of counsel be bottomed on an evidentiary exploration by collateral or post-conviction proceeding brought under CPL 440.10" (People v Maffei __ NY3d __, 2020 NY Slip Op 02680, *3 [2020] [citations and internal quotation marks omitted]).
In Maffei, these principles led the Court of Appeals to reject, as unreviewable on direct appeal, the defendant's claim that his trial counsel had been ineffective in failing to challenge the seating of a juror. The voir dire record in that case showed that the juror in question had stated that he had "[k]ind of made up [his] mind" about the case based on pretrial publicity. Moreover, the same juror had equivocally answered, "I hope so," when asked by the court whether he could consider the evidence fairly and impartially. Nonetheless, the Court of Appeals held that the Maffei defendant's ineffectiveness claim could be asserted only through a CPL 440.10 motion.
In this case, the premise of defendant's ineffectiveness claim is that his trial counsel failed to advise him, as required by Padilla v Kentucky (559 US 356 [2010]), that the plea deal that the People were offering him (and that he ultimately accepted) would subject him to mandatory deportation under federal law. As evidence of this alleged ineffectiveness, defendant points only to his counsel's representations to the court at the plea hearing that he had reviewed with defendant "all possible consequences" of the plea for defendant's immigration status and that "[w]e've looked into everything" in that regard. Obviously, these statements do not disclose or describe the advice that defendant actually received. Rather, the claim seems to be that the reference to "all possible consequences" of the plea was inconsistent with the fact that a plea of guilty to the offense to which defendant allocuted (which federal immigration law classifies as an aggravated felony) ostensibly would render him subject to mandatory deportation [FN1]. Based on this [*3]logic, defendant argues that, to establish a Padilla violation, he need not make a CPL 440.10 motion supported by direct evidence of the immigration advice he received. We are not persuaded by this argument.
"Where a defendant's complaint about counsel is predicated on factors such as counsel's strategy, advice or preparation that do not appear on the face of the record, the defendant must raise his or her claim via a CPL 440.10 motion" (People v Peque, 22 NY3d 168, 202 [2013] [emphasis added]). This principle fully applies to claims of ineffectiveness based on alleged Padilla violations, as illustrated by the Court of Appeals' rejection of the defendant's attempt to raise a Padilla claim on direct appeal in Peque (see id. ["it was incumbent on defendant to substantiate his allegations about counsel's (immigration) advice below by filing a CPL 440.10 motion, and his failure to file a postjudgment motion renders his claim unreviewable"]; see also People v Haffiz, 19 NY3d 883, 885 [2012]).
We do not agree with defendant's attempt to exempt himself from the necessity of making a CPL 440.10 motion based on his counsel's statements at the plea hearing concerning the off-the-record advice concerning immigration that had been rendered. To reiterate, counsel's statements to the court, on their face, are general in nature and do not purport to describe the contents of the immigration advice that defendant actually received. The statement that defendant had been advised of "all possible consequences" was consistent both with accurate advice that the plea would subject him to mandatory deportation and with inaccurate advice that failed to warn him of that consequence. We cannot, on this record, tell whether the advice actually given was accurate or inaccurate. Certainly, it cannot be said that counsel's statement establishes "irrefutably" (McLean, 15 NY3d at 121) that the advice given was inaccurate, as is required to render a CPL 440.10 motion unnecessary. If the requirement of such a motion were so easily avoided, the troubling on-the-record answers of the juror in Maffei surely would have sufficed to establish ineffectiveness; yet the Court of Appeals held otherwise. The same result is required here.[FN2]
As defendant does not raise any issues reviewable on direct appeal, we affirm the [*4]conviction.
All concur except Gische, J. and Gesmer, J. who dissent in a memorandum by Gesmer, J. as follows:




GESMER, J. (dissenting)


I respectfully dissent. Our precedents require that we reverse, hold defendant's conviction in abeyance, and remit the matter to allow defendant the opportunity to move to vacate his plea upon a showing that there is a reasonable probability that he would not have pleaded guilty had counsel made him aware of the deportation consequences of his plea (People v Disla, 173 AD3d 555 [1st Dept 2019]; People v Johnson, 177 AD3d 484 [1st Dept 2019]; People v Johnson, 165 AD3d 556 [1st Dept 2018]; People v Rodriguez, 165 AD3d 546 [1st Dept 2018]; People v Pequero, 158 AD3d 421 [1st Dept 2018]; People v Doumbia, 153 AD3d 1139 [1st Dept 2017]).
At issue is whether the existing record sufficiently demonstrates that defendant was deprived of ineffective assistance of counsel. At defendant's plea hearing, the following colloquy took place:
THE COURT: I'm also obligated to explain to you that, if you're not a US citizen, you could subject yourself to the following set of circumstances: You could be subject to deportation just because you're not a US citizen, you could lose your right to receive naturalization papers and or, if you were to leave the Country, you could be denied reentry, do you understand what the Court is saying?
THE DEFENDANT: Yes.
THE COURT: [Counsel], do we have any Padilla issues here?
THE [COUNSEL]: I believe - I've spoken to for [sic] [defendant] about all possible consequences.
THE COURT: Possible consequences?
THE [COUNSEL]: Yes.
THE COURT: The Court is prepared to give you more time to research on the outcome here, if you want more time.
THE [COUNSEL]: We've looked into everything, Your Honor. Thank you.
THE COURT: All right. You want to continue with this guilty plea colloquy?
THE [COUNSEL]: Yes.
Defendant then pleaded guilty to attempted criminal possession of a weapon in the second degree (Penal Law §§ 110.00; 265.03[3]), which is considered an "aggravated felony" for immigration purposes (see 8 USC § 1101[a][43][E][ii]; 18 USC § 922[g][5][A]). This subjected defendant, a non-U.S. citizen, to mandatory deportation (8 USC § 1227[a][2][A][iii]; see also People v Corporan, 135 AD3d 485, 485 [1st Dept 2016][a "plea of guilty to an aggravated felony trigger[s] mandatory deportation under federal law"]). He was also subjected to mandatory immigration detention and mandatory elimination of certain immigration defenses (8 USC § 1226[c][1][B]; 8 USC § 1229b[b][1][B],[C]).
Thus, under federal law, by pleading guilty, defendant subjected himself to the virtual certainty of mandatory deportation (see People v Peque, 22 NY3d 168, 191 [2013] ["deportation is a virtually automatic result of a New York felony conviction for nearly every noncitizen [*5]defendant"])[FN3]. Consequently, defendant's counsel was obligated to inform him of the clear immigration consequences of his guilty plea (see Padilla v Kentucky, 559 US 356, 369 [2010] ["when the deportation consequence is truly clear . . . , the duty to give correct advice is equally clear"].
We have consistently held that counsel's representations to the court about counsel's immigration advice to his or her client provides a sufficient basis to determine if that advice is correct (People v Disla, 173 AD3d at 556; People v Johnson, 177 AD3d at 485; People v Johnson, 165 AD3d at 557; People v Rodriguez, 165 AD3d at 546; People v Pequero, 158 AD3d at 422; People v Doumbia, 153 AD3d at 1139). We have further repeatedly held that immigration advice that speaks in terms of possibilities when deportation is a virtual certainty is misadvice supporting an ineffective assistance of counsel finding (People v Disla, 173 AD3d at 556; People v Johnson, 177 AD3d at 485; People v Johnson, 165 AD3d at 557; People v Rodriguez, 165 AD3d at 546; People v Pequero, 158 AD3d at 422; People v Doumbia, 153 AD3d at 1139).
In this case, the immigration consequences that faced defendant as a result of his guilty plea were not "possible" but virtually certain. Therefore, counsel's statement that he described to defendant "all possible consequences" makes clear that he inaccurately conveyed to defendant the immigration consequences of his plea [FN4]. In fact, had counsel properly "looked into everything," as he claimed he had done, he would have represented to the court that he advised defendant that he faced mandatory deportation, not "all possible consequences," by pleading guilty. Thus, counsel's on-the-record error "irrefutably" demonstrates that his services were ineffective (People v McLean, 15 NY3d 117, 121 [2010]). To find otherwise is to cast aside this Court's own precedent.
The cases cited by the majority are distinguishable and do not support the majority's argument. In People v Maffei, __ NY3d __, 2020 NY Slip Op 02680 [2020], the defendant sought review on direct appeal of his claim that his counsel was ineffective for failing to challenge the seating of an allegedly biased juror. The Court held that the defendant could not sustain his burden based on the voir dire record alone because it did not reveal the reasons for counsel's decisions, which could "be based on a myriad of factors" outside the record (id. at *3), such as "additional statements [made] by the prospective juror" (id.), or "what was said between defendant and his counsel or how that conversation may have affected counsel's impression of [*6][the] prospective juror" (id. at *4). Thus, the Court held that an "evidentiary exploration" is "especially" appropriate where effectiveness of counsel is based on the defense's acceptance of a prospective juror (id. at *3). In contrast, the instant appeal involves a relatively straightforward analysis of an ineffective assistance claim based on a Padilla violation, which turns on a single question: did counsel provide clear and accurate advice to defendant regarding his immigration consequences? The record irrefutably demonstrates that he did not, and there are no other matters outside the record that need be examined.
The majority's citation to People v Peque, (22 NY3d 168 [2013]) is equally irrelevant. The majority cited to that portion of the opinion in which the Court of Appeals held that defendant Peque could only raise ineffectiveness of counsel by means of a 440 motion because statements made by his counsel on the record at sentencing directly contradicted defendant's complaints about counsel's performance. Therefore, defendant's claim required a factual hearing. In the case at bar, nothing in the sentencing record contradicts defendant's claim that his counsel was ineffective. Accordingly, the majority's reliance on that case is inapposite.
Finally, the majority fails to explain why the case before us is not governed by the many previous cases from this Court in which we held that we can review and grant an ineffective assistance claim when counsel represented to the plea or sentencing court that he or she advised the defendant as to the possible immigration consequences of the plea when, in fact, the defendant faced mandatory deportation (People v Disla, 173 AD3d at 556; People v Johnson, 177 AD3d at 485; People v Johnson, 165 AD3d at 557; People v Rodriguez, 165 AD3d at 546; People v Pequero, 158 AD3d at 422; People v Doumbia, 153 AD3d at 1139).
Accordingly, I would reverse, because the record makes irrefutably clear that counsel failed to convey to defendant that his deportation was mandatory.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: AUGUST 13, 2020
CLERK



Footnotes

Footnote 1:It bears noting that defendant's plea would not have barred him from seeking to avoid deportation on certain grounds. Under 8 USC § 1231(b)(3)(A), removal of a non-citizen may be restricted if his or her "life or freedom would be threatened in [his or her] country [of origin] because of . . . race, religion, nationality, membership in a particular social group, or political opinion." In our case, defendant's plea to an aggravated felony is not a bar to this form of discretionary relief, because he was sentenced to less than 5 years in prison (see 8 USC § 1231[b][3][B] [providing that a non-citizen's conviction of an aggravated felony for which the term of imprisonment is at least five years is statutorily ineligible for withholding of removal]). In addition, a non-citizen may apply for relief under the Convention Against Torture (CAT) (8 CFR 1208.16 [CAT withholding]; 8 CFR 1208.17 [CAT deferral]), which is available regardless of whether such applicant has been convicted of an aggravated felony (see Moncrieffe v Holder, 569 US 184, 187 n 1 [2013] ["the Attorney General has no discretion to deny relief to a noncitizen who establishes his eligibility (under the CAT). A conviction of an aggravated felony has no effect on CAT eligibility"]). The present record does not disclose whether defendant would have qualified for relief under either of these provisions. These potential avenues of relief, while they certainly would not excuse counsel from advising defendant of the "mandatory" deportation that would likely result from the plea, may well indicate what counsel had in mind when he referred in the plural to the plea's "possible consequences."

Footnote 2:We are bound by the Court of Appeals' holding that an ineffectiveness claim is reviewable upon direct appeal only where the existing record establishes the claim "irrefutably" (McLean, 15 NY3d at 121), regardless of any inconsistency with this principle that may appear in the decisions of this Court upon which the dissent relies. We are not persuaded by the dissent's efforts to distinguish two of the Court of Appeals decisions (Maffei and Peque) on which we rely. The basis on which the dissent seeks to distinguish each of those decisions is that here, counsel's on-the-record statements to the court "irrefutably demonstrate[]" that counsel gave defendant inaccurate advice about the consequences of the plea. For the reasons already discussed, those statements do not, in our view, demonstrate — irrefutably or otherwise — that counsel gave defendant ineffective pre-plea advice.

Footnote 3: In addition, because of his "aggravated felony" conviction, defendant is ineligible both for asylum (8 USC § 1158[b][2][B][i]) and cancellation of his removal by the Attorney General (8 USC § 1229b[b][1][C]).

Footnote 4:The majority states in a footnote that defendant's plea might not bar him from pursuing certain narrow grounds for deportation relief. We agree. However, our precedent does not turn on there being absolute certainty that defendant will be deported, but rather whether the deportation is "mandatory" (People v Disla, 173 AD3d at 556; People v Johnson, 177 AD3d at 485; People v Johnson, 165 AD3d at 557; People v Rodriguez, 165 AD3d at 546; People v Pequero, 158 AD3d at 422) or "a virtual certainty" (People v Doumbia, 153 AD3d at 1140). Where a defendant is subject to mandatory deportation, if "defense counsel only ha[d] a duty to inform a noncitizen that there is a risk or possibility that he or she may be deported[,] [s]uch a standard would not only seriously undermine the Sixth Amendment protection to which noncitizen defendants are entitled, but would also conflict with the concept of a truly informed plea agreement" (People v Doumbia, 153 AD3d at 1140, citing Padilla, 559 US at 373-374).