People v Brown (2025 NY Slip Op 02421)

People v Brown

2025 NY Slip Op 02421

Decided on April 24, 2025

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: April 24, 2025

Before: Moulton, J.P., Mendez, Rodriguez, Pitt-Burke, Rosado, JJ. 

Ind No. 4524/18|Appeal No. 4173|Case No. 2020-02183|

[*1]The People of the State of New York, Respondent,
v
Shaquan Brown, Defendant-Appellant.

Caprice R. Jenerson, Office of the Appellate Defender, New York (Ronald Zapata of counsel), for appellant.
Alvin L. Bragg, Jr., District Attorney, New York (Brent E. Yarnell of counsel), for respondent.

Judgment, Supreme Court, New York County (Michele Rodney, J.), rendered February 6, 2020, convicting defendant, after a jury trial, of burglary in the first degree and assault in the second degree (two counts), and sentencing him, as a second violent felony offender, to an aggregate term of 21 years, unanimously affirmed.
Defendant's conviction stems from a brutal assault inside the Manhattan Detention Center (MDC) on September 11, 2018. Defendant and six other men broke into another man's jail cell in an orchestrated attack, punching and kicking him in the head and leaving a shoe print on his forehead. Defendant also slashed the victim across the face with a blade. Defendant and his co-defendants, members of a gang themselves, appeared to believe the victim was a member of a rival gang. The victim was treated for deep cuts to his left cheek, another cut to the back of his neck, and bruising and swelling on multiple parts of his head.
The evidence presented against defendant at trial was overwhelming. The victim unequivocally testified that he got a "clear" look at the man who slashed him, who he identified as defendant. Moreover, although there were no surveillance cameras inside the victim's cell, footage from cameras outside the cell captured defendant and the other men forcing their way into the victim's cell, exiting the cell after the attack, and later congregating in a different cell inside the facility. A gangs investigator with the Department of Corrections (DOC), who was familiar with defendant and his co-defendants from his regular tours of the facility, subsequently confirmed the identities of the perpetrators of the assault, including defendant, using the footage, specifically snapshots of the video that had been zoomed in on defendant's face, as well as "look-up" photographs taken of the men upon their entry into the facility. Additionally, the victim testified that during the attack, he heard one of the men refer to defendant by a specific nickname, and DOC records confirmed that defendant went by that nickname.
The victim further testified that in the summer of 2019, the victim was housed with defendant at another correctional facility, where the victim heard another inmate refer to defendant by the same nickname. While housed together, defendant also passed the victim notes asking him to prepare an affidavit stating that he had given defendant and the other men involved in the attack permission to enter his cell. The victim then falsely wrote that information in an affidavit so that defendant would "leave [him] alone."
Defendant's burglary conviction was supported by legally sufficient evidence (see People v Denson, 26 NY3d 179, 188 [2015]; People v Danielson, 9 NY3d 342, 349 [2007]), and the verdict was not against the weight of the evidence (see Danielson, 9 NY3d at 348; see also People v Baque, 43 NY3d 26 [2024]). The victim's jail cell qualified as a dwelling under Penal Law § 140 (see People v Cummings, 16 NY3d 784, 785[*2][2011], cert denied 565 US 682 [2011]). Although the victim lacked full control over access to his cell, he had some ability to restrict entry by other inmates, and the MDC rulebook, which was distributed to all inmates, informed them that they were prohibited from entering each other's cells.
Defendant failed to preserve his claim that the People failed to prove that he remained unlawfully in the victim's cell (see People v Hawkins, 11 NY3d 484, 492 [2008]), and we decline to consider it in the interest of justice. As an alternative holding, we reject it on the merits.
Defendant affirmatively waived and failed to preserve his claim that a DOC witness's testimony about his nickname and gang membership was based on inadmissible hearsay, since he "expressly agreed to the remedy fashioned by the court" and "implicitly abandoned any prior objections" (People v Alvarez, 239 AD2d 263 [1st Dept 1997], lv denied 90 NY2d 1009 [1997]). His failure to challenge the admissibility of DOC documents as business records deprived the court of an opportunity to develop a full record (see People v McLean, 15 NY3d 117, 120-121 [2010]). We also decline to review it in the interest of justice. As an alternative holding, we reject it on the merits. Even if the checklist used by DOC to assess defendant as a gang member was "inadmissible hearsay material," the People's expert would have been permitted to rely on the material as long as it was "accepted in [his] profession as reliable in forming a professional opinion" and there was "evidence establishing the reliability of the out-of-court material" (People v Ortega, 40 NY3d 463, 476 [2023]).
Defendant failed to preserve his claim that the court improperly admitted non-eyewitness testimony identifying him in jail surveillance footage (People v Sanchez, 67 AD3d 491, 491 [1st Dept 2009]), and we decline to consider it in the interest of justice. As an alternative holding, we reject it on the merits. The DOC gangs investigator "had sufficient contact with . . . defendant" over an extended period of time "to achieve a level of familiarity that render[ed] the lay opinion helpful," in identifying defendant in chaotic video footage of an assault involving numerous people (People v Mosley, 41 NY3d 640, 648-649 [2024]; People v Boyd, 151 AD3d 641, 641 [1st Dept 2017], lv denied 29 NY3d 1124 [2017]). Additionally, the People's technologist testified only about editing surveillance footage in preparation for trial by spotlighting defendant; he did not identify defendant in court, and his "testimony as a whole made clear that he did not claim to recognize defendant in the video" (People v Calderon, 171 AD3d 422, 423 [1st Dept 2019], lv denied 33 NY3d 1102 [2019]).
Defendant failed to object to outbursts by a spectator and his codefendant at trial after the jury read the verdict but before the jury was polled, rendering his claim that the court should have issued a curative instruction unpreserved (see People v Nelson, 27 NY3d 361[*3], 367 [2016], cert denied 580 US 880 [2016]; People v Antomarchi, 261 AD2d 312 [1st Dept 1999]), and we decline to consider it in the interest of justice. As an alternative holding, we reject it on the merits. The brief outburst posed minimal risk of prejudice, and a curative instruction would have unnecessarily "highlight[ed] a brief instance of misconduct" (Nelson, 27 NY3d at 369).
Insofar as harmless error analysis is applicable to any of the foregoing issues, we find that any error was harmless (see People v Crimmins, 36 NY2d 230 [1975]).
Defendant failed to preserve his due process claim that the court incorrectly stated at sentencing that he had testified, and that he had been disrespectful to the court while doing so (see People v Hoover, 223 AD3d 415, 416 [1st Dept 2024]; see generally People v Outley, 80 NY2d 702, 712 [1993]).
We perceive no basis for reducing defendant's sentence.
We have considered defendant's remaining arguments and find them unavailing.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: April 24, 2025